410 U.S. 614 (1973)
LINDA R. S.
v.
RICHARD D. ET AL.
No. 71-6078.
Supreme Court of United States.
Argued December 6, 1972.
Decided March 5, 1973.
APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS.
Windle Turley argued the cause and filed a brief for appellant.
Robert W. Gauss, Assistant Attorney General of Texas, argued the cause for appellees. On the brief were Crawford C. Martin, Attorney General, Nola White, First Assistant Attorney General, Alfred Walker, Executive Assistant Attorney General, J. C. Davis and Pat Bailey, Assistant Attorneys General, and Samuel D. McDaniel.
MR. JUSTICE MARSHALL delivered the opinion of the Court.
Appellant, the mother of an illegitimate child, brought this action in United States District Court on behalf of herself, her child, and others similarly situated to enjoin *615 the "discriminatory application" of Art. 602 of the Texas Penal Code. A three-judge court was convened pursuant to 28 U. S. C. § 2281, but that court dismissed the action for want of standing.[1] 335 F. Supp. 804 (ND Tex. 1971). We postponed consideration of jurisdiction until argument on the merits, 405 U. S. 1064, and now affirm the judgment below.
Article 602, in relevant part, provides: "any parent who shall wilfully desert, neglect or refuse to provide for the support and maintenance of his or her child or children under eighteen years of age, shall be guilty of a misdemeanor, and upon conviction, shall be punished by confinement in the County Jail for not more than two years." The Texas courts have consistently construed this statute to apply solely to the parents of legitimate children and to impose no duty of support on the parents of illegitimate children. See Home of the Holy Infancy v. Kaska, 397 S. W. 2d 208, 210 (Tex. 1966); Beaver v. State, 96 Tex. Cr. R. 179, 256 S. W. 929 (1923). In her complaint, appellant alleges that one Richard D. is the father of her child, that Richard D. has refused to provide support for the child, and that although appellant made application to the local district attorney for enforcement of Art. 602 against Richard D., the district attorney refused to take action for the express *616 reason that, in his view, the fathers of illegitimate children were not within the scope of Art. 602.[2]
Appellant argues that this interpretation of Art. 602 discriminates between legitimate and illegitimate children without rational foundation and therefore violates the Equal Protection Clause of the Fourteenth Amendment. Cf. Gomez v. Perez, 409 U. S. 535 (1973); Weber v. Aetna Casualty & Surety Co., 406 U. S. 164 (1972); Glona v. American Guarantee & Liability Ins. Co., 391 U. S. 73 (1968); Levy v. Louisiana, 391 U. S. 68 (1968). But cf. Labine v. Vincent, 401 U. S. 532 (1971). Although her complaint is not entirely clear on this point, she apparently seeks an injunction running against the district attorney forbidding him from declining prosecution on the ground that the unsupported child is illegitimate.
Before we can consider the merits of appellant's claim or the propriety of the relief requested, however, appellant must first demonstrate that she is entitled to invoke the judicial process. She must, in other words, show that the facts alleged present the court with a "case or controversy" in the constitutional sense and that she is a proper plaintiff to raise the issues sought to be litigated. The threshold question which must be answered is whether the appellant has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U. S. 186, 204 (1962).
Recent decisions by this Court have greatly expanded the types of "personal stake[s]" which are capable of *617 conferring standing on a potential plaintiff. Compare Tennessee Electric Power Co. v. TVA, 306 U. S. 118 (1939), and Alabama Power Co. v. Ickes, 302 U. S. 464 (1938), with Barlow v. Collins, 397 U. S. 159 (1970), and Association of Data Processing Service Organizations v. Camp, 397 U. S. 150 (1970). But as we pointed out only last Term, "broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." Sierra Club v. Morton, 405 U. S. 727, 738 (1972). Although the law of standing has been greatly changed in the last 10 years, we have steadfastly adhered to the requirement that, at least in the absence of a statute expressly conferring standing,[3] federal plaintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.[4] See, e. g., Moose Lodge No. 107 v. Irvis, 407 U. S. 163, 166-167 (1972); Flast v. Cohen, 392 U. S. 83, 101 (1968); Baker v. Carr, 369 U. S. 186, 204 (1962). Cf. Laird v. Tatum, 408 U. S. 1, 13 (1972).
Applying this test to the facts of this case, we hold that, in the unique context of a challenge to a criminal statute, appellant has failed to allege a sufficient nexus *618 between her injury and the government action which she attacks to justify judicial intervention. To be sure, appellant no doubt suffered an injury stemming from the failure of her child's father to contribute support payments. But the bare existence of an abstract injury meets only the first half of the standing requirement. "The party who invokes [judicial] power must be able to show . . . that he has sustained or is immediately in danger of sustaining some direct injury as the result of [a statute's] enforcement." Massachusetts v. Mellon, 262 U. S. 447, 488 (1923) (emphasis added). See also Ex parte Levitt, 302 U. S. 633, 634 (1937). As this Court made plain in Flast v. Cohen, supra, a plaintiff must show "a logical nexus between the status asserted and the claim sought to be adjudicated. . . . Such inquiries into the nexus between the status asserted by the litigant and the claim he presents are essential to assure that he is a proper and appropriate party to invoke federal judicial power." Id., at 102.
Here, appellant has made no showing that her failure to secure support payments results from the nonenforcement, as to her child's father, of Art. 602. Although the Texas statute appears to create a continuing duty, it does not follow the civil contempt model whereby the defendant "keeps the keys to the jail in his own pocket" and may be released whenever he complies with his legal obligations. On the contrary, the statute creates a completed offense with a fixed penalty as soon as a parent fails to support his child. Thus, if appellant were granted the requested relief, it would result only in the jailing of the child's father. The prospect that prosecution will, at least in the future, result in payment of support can, at best, be termed only speculative. Certainly the "direct" relationship between the alleged injury and the claim sought to be adjudicated, which previous decisions of this Court suggest is a prerequisite of standing, is absent in this case.
*619 The Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution. See Younger v. Harris, 401 U. S. 37, 42 (1971); Bailey v. Patterson, 369 U. S. 31, 33 (1962); Poe v. Ullman, 367 U. S. 497, 501 (1961). Although these cases arose in a somewhat different context, they demonstrate that, in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another. Appellant does have an interest in the support of her child. But given the special status of criminal prosecutions in our system, we hold that appellant has made an insufficient showing of a direct nexus between the vindication of her interest and the enforcement of the State's criminal laws. The District Court was therefore correct in dismissing the action for want of standing,[5] and its judgment must be affirmed.[6]
So ordered.
MR. JUSTICE WHITE, with whom MR. JUSTICE DOUGLAS joins, dissenting.
Appellant Linda R. S. alleged that she is the mother of an illegitimate child and that she is suing "on behalf of *620 herself, her minor daughter, and on behalf of all other women and minor children who have sought, are seeking, or in the future will seek to obtain support for so-called illegitimate children from said child's father." Appellant sought a declaratory judgment that Art. 602 is unconstitutional and an injunction against its continued enforcement against fathers of legitimate children only. Appellant further sought an order requiring Richard D., the putative father, "to pay a reasonable amount of money for the support of his child."
Obviously, there are serious difficulties with appellant's complaint insofar as it may be construed as seeking to require the official appellees to prosecute Richard D. or others, or to obtain what amounts to a federal child-support order. But those difficulties go to the question of what relief the court may ultimately grant appellant. They do not affect her right to bring this class action. The Court notes, as it must, that the father of a legitimate child, if prosecuted under Art. 602, could properly raise the statute's underinclusiveness as an affirmative defense. See McLaughlin v. Florida, 379 U. S. 184 (1964); Railway Express Agency v. New York, 336 U. S. 106 (1949). Presumably, that same father would have standing to affirmatively seek to enjoin enforcement of the statute against him. Cf. Rinaldi v. Yeager, 384 U. S. 305 (1966); see also Epperson v. Arkansas, 393 U. S. 97 (1968). The question then becomes simply: why should only an actual or potential criminal defendant have a recognizable interest in attacking this allegedly discriminatory statute and not appellant and her class? They are not, after all, in the position of members of the public at large who wish merely to force an enlargement of state criminal laws. Cf. Sierra Club v. Morton, 405 U. S. 727 (1972). Appellant, her daughter, and the children born out of wedlock whom *621 she is attempting to represent have all allegedly been excluded intentionally from the class of persons protected by a particular criminal law. They do not get the protection of the laws that other women and children get. Under Art. 602, they are rendered nonpersons; a father may ignore them with full knowledge that he will be subjected to no penal sanctions. The Court states that the actual coercive effect of those sanctions on Richard D. or others "can, at best, be termed only speculative." This is a very odd statement. I had always thought our civilization has assumed that the threat of penal sanctions had something more than a "speculative" effect on a person's conduct. This Court has long acted on that assumption in demanding that criminal laws be plainly and explicitly worded so that people will know what they mean and be in a position to conform their conduct to the mandates of law. Certainly Texas does not share the Court's surprisingly novel view. It assumes that criminal sanctions are useful in coercing fathers to fulfill their support obligations to their legitimate children.
Unquestionably, Texas prosecutes fathers of legitimate children on the complaint of the mother asserting non-support and refuses to entertain like complaints from a mother of an illegitimate child. I see no basis for saying that the latter mother has no standing to demand that the discrimination be ended, one way or the other.
If a State were to pass a law that made only the murder of a white person a crime, I would think that Negroes as a class would have sufficient interest to seek a declaration that that law invidiously discriminated against them. Appellant and her class have no less interest in challenging their exclusion from what their own State perceives as being the beneficial protections that flow from the existence and enforcement of a criminal child-support law.
*622 I would hold that appellant has standing to maintain this suit and would, accordingly, reverse the judgment and remand the case for further proceedings.
MR. JUSTICE BLACKMUN, with whom MR. JUSTICE BRENNAN joins, dissenting.
By her complaint, appellant challenged Texas' exemption of fathers of illegitimate children from both civil and criminal liability. Our decision in Gomez v. Perez, 409 U. S. 535 (1973), announced after oral argument in this case, has important implications for the Texas law governing a man's civil liability for the support of children he has fathered illegitimately. Although appellant's challenge to the civil statute, as the Court points out, is not procedurally before us, ante, at 615 n. 1, her brief makes it clear that her basic objection to the Texas system concerns the absence of a duty of paternal support for illegitimate children. The history of the case suggests that appellant sought to utilize the criminal statute as a tool to compel support payments for her child. The decision in Gomez may remove the need for appellant to rely on the criminal law if she continues her quest for paternal contribution.
The standing issue now decided by the Court is, in my opinion, a difficult one with constitutional overtones. I see no reason to decide that question in the absence of a live, ongoing controversy. See Rice v. Sioux City Memorial Park Cemetery, 349 U. S. 70 (1955). Gomez now has beclouded the state precedents relied upon by both parties in the District Court. Thus "intervening circumstances may well have altered the views of the participants," and the necessity for resolving the particular dispute may no longer be present. Protective Committee v. Anderson, 390 U. S. 414, 453-454 (1968). Under these circumstances, I would remand the case to the District Court for clarification of the status of the litigation.
NOTES
[1] The District Court also considered an attack on Art. 4.02 of the Texas Family Code, which imposes civil liability upon "spouses" for the support of their minor children. Petitioner argued that the statute violated equal protection because it imposed no civil liability on the parents of illegitimate children. However, the three-judge court held that the challenge to this statute was not properly before it since appellant did not seek an injunction running against any state official as to it. See 28 U. S. C. § 2281. The Court, therefore, remanded this portion of the case to a single district judge. 335 F. Supp. 804, 807. The District Court's disposition of petitioner's Art. 4.02 claim is not presently before us. But see Gomez v. Perez, 409 U. S. 535 (1973).
[2] Appellant attached to her complaint an affidavit, signed by an assistant district attorney, stating that the State was unable to institute prosecution "due to caselaw construing Art. 602 of the Penal Code to be inapplicable to fathers of illegitimate children."
[3] It is, of course, true that "Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions," Sierra Club v. Morton, 405 U. S. 727, 732 n. 3 (1972). But Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute. See, e. g., Trafficante v. Metropolitan Life Ins. Co., 409 U. S. 205, 212 (1972) (WHITE, J., concurring); Hardin v. Kentucky Utilities Co., 390 U. S. 1, 6 (1968).
[4] One of the leading commentators on standing has written, "Even though the past law of standing is so cluttered and confused that almost every proposition has some exception, the federal courts have consistently adhered to one major proposition without exception: One who has no interest of his own at stake always lacks standing." K. Davis, Administrative Law Text 428-429 (3d ed. 1972).
[5] We noted last Term that "[t]he requirement that a party seeking review must allege facts showing that he is himself adversely affected does not insulate executive action from judicial review, nor does it prevent any public interests from being protected through the judicial process." Sierra Club v. Morton, 405 U. S., at 740. That observation is fully applicable here. As the District Court stated, "the proper party to challenge the constitutionality of Article 602 would be a parent of a legitimate child who has been prosecuted under the statute. Such a challenge would allege that because the parents of illegitimate children may not be prosecuted, the statute unfairly discriminates against the parents of legitimate children." 335 F. Supp., at 806.
[6] Since we dispose of this case on the basis of lack of standing, we intimate no view as to the merits of appellant's claim. But cf. Gomez v. Perez, 409 U. S. 535 (1973).