Jane DOE No. 1, et al.

v.

**MAYOR AND CITY COUNCIL OF PO-
COMOKE CITY, d/b/a Pocomoke
City Police Department, et al.**

Civ. No. PN–88–3259.

United States District Court,
D. Maryland.

Aug. 31, 1990.

Brian H. Silver, Roger N. Powell, Baltimore, Md., for plaintiffs.

David E. Grover, Greenbelt, Md., John E. Bloxom, Pocomoke City, Md., for defendants Mayor and City Council of Pocomoke City.

Robert C. Verderaime, Elizabeth A. Jesukiewicz, Verderaime & DuBois, P.A., Baltimore, Md., for defendants Mayor and City Council of Ocean City.

J. Joseph Curran, Jr., Atty. Gen. of Md., Maureen M. Dove, Asst. Atty. Gen., Baltimore, Md., for defendant State's Atty. for Worcester County.

## OPINION

NIEMEYER, Circuit Judge, sitting by designation.

Jane Does, Nos. 1, 2, and 3, who are female victims of sexual assaults, have sued the Mayor and City Council of Pocomoke City, Maryland, the Mayor and City Council of Ocean City, Maryland, and the State's Attorney for Worcester County, Maryland, alleging that the police departments of Pocomoke City and Ocean City failed to investigate properly the crimes and that the State's Attorney for Worcester County refused to prosecute them. The plaintiffs contend that the defendants have followed a policy of discrimination against women for the purpose of protecting the reputation of Ocean City as a family beach resort. The plaintiffs sue exclusively for damages.

The defendants have filed motions to dismiss and for summary judgment based on numerous grounds. The motions will be granted on the specific grounds that these plaintiffs have no standing as victims to insist on governmental investigations and prosecutions and also that the Worcester County State's Attorney is absolutely immune from suit for the type of conduct alleged. Dismissal of Count III is in part

based on the absence of subject matter jurisdiction.

# I

## BACKGROUND

Jane Doe No. 1 reported to the Pocomoke City Police Department in December 1986 that she had been raped, and thereafter she identified her assailants in a line-up. After a preliminary investigation, the State's Attorney dropped the case, refusing to prosecute the charges. Jane Doe No. 1 alleges that during the investigation of her rape, the Worcester County State's Attorney's Office lost the clothes that she wore during the incident which had been retained as evidence. She further alleges that the State's Attorney "belittled" her by "accusing her of voluntarily having sex with her attacker and rapist." She charges that the investigations by both the police department and the State's Attorney were inadequate and the refusal to prosecute was prompted by a policy of discrimination against female victims of sex crimes.

Jane Doe No. 2, a minor who is subject to the joint custody of divorced parents, was sexually abused by a member of her father's household while visiting him in the spring of 1988. Her mother reported the incident. After joint investigations by the Worcester County Department of Social Services and the Maryland State Police, in which the Worcester County State's Attorney's Office is alleged to have participated, Jane Doe No. 2's mother was informed that no further investigation would be conducted. When she complained to the Maryland Attorney General, another investigation was conducted by a different officer of the Maryland State Police. In a subsequent meeting between representatives of the State Police, the Department of Social Services, and the Worcester County State's Attorney's Office, it was concluded that no crime had in fact occurred and that no prosecution would be pursued in the matter. Jane Doe No. 2 charges that there was an inadequate investigation and that the refusal to prosecute resulted from a policy of discrimination against female victims of sex crimes.

In June 1988 Jane Doe No. 3 reported to the Ocean City Police Department that she had been raped. She identified her attackers who were then apprehended by the Ocean City Police Department. They were subsequently interviewed and released without being charged. Jane Doe No. 3 contends that the report on the incident made by the Ocean City Police was superficial and was intended to rationalize the release of her attackers. On further investigation by the Worcester County State's Attorney's Office, charges were brought against Jane Doe No. 3 for filing a false report. The false report charges have since been "nolle prossed." She contends that the charges were initiated "with the sole purpose and with the intended effect of discouraging the availment of Jane Doe No. 3 and other women to the protection of the Ocean City Police Department for violation of the laws of the State of Maryland."

Count I of the complaint is brought by all three plaintiffs under 42 U.S.C. § 1983 against all defendants alleging a denial of equal protection of the laws. Counts II and III are brought solely by Jane Doe No. 3 and are characterized as claims for "discriminatory prosecution" and "false imprisonment" based on the charges filed against her for making a false statement.

# II

## STANDING

The core allegations of Count I of the amended complaint charge that all defendants failed to investigate adequately the crimes of which the plaintiffs were victims and that the Worcester County State's Attorney refused to prosecute those crimes. Plaintiffs attribute these failures to inadequate training and to a policy of discrimination against female victims of sex crimes. They can attribute no direct injury to the acts of the defendants, other than the general loss suffered by the public, and by them as members, from the public officials' failure to perform their jobs of bringing alleged criminals to justice.

The Court is not aware of a constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime. These are discretionary public duties that are enforced by public opinion, policy, and the ballot. In *Sattler v. Johnson,* 857 F.2d 224 (4th Cir.1988), the court recited such a proposition almost axiomatically:

> Sattler's counsel suggested that Sattler had an enforceable right as a member of the public at large and as a victim to have the defendants criminally prosecuted. He further urged that such a right was protected by the equal protection clause of the fourteenth amendment. There is, of course, no such constitutional right....

*Id.* at 227. *See also Sellner v. Panagoulis,* 565 F.Supp. 238, 250 (D.Md.1982) (the court did not "know of any right afforded by either the Constitution or laws of the United States to private persons to compel a state to prosecute criminal activity"), *aff'd without opinion,* 796 F.2d 474 (4th Cir. 1986), *cert. denied,* 479 U.S. 1069, 107 S.Ct. 962, 93 L.Ed.2d 1009 (1987). A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public. Therefore, no one member of the public has a right to compel a public official to act.

Related to the absence of a duty is the absence of a legally cognizable injury. The injury that a member of the public, or even a victim, sustains because a prosecutor fails to act is undefinable and remote. While it is true that members of the public have a keen interest in bringing criminals to justice, when a prosecutor exercises his or her discretion and elects not to prosecute a given suspect for whatever reason, it cannot be said that these members of the public are injured in any specific manner. Injury that gives a plaintiff standing to sue in court is distinct from public injury and is palpable. Furthermore, the relief requested must be capable of redressing the specific injury for which it is sought. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984).

In a prosecutorial discretion case similar to this one, the Supreme Court in *Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), summarized this controlling principle of standing:

> The Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution. [citations omitted.] ... [I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.

*Id.* at 619, 93 S.Ct. at 1149. The plaintiff, who was an unwed mother seeking child support from the child's father, had sought an injunction against the district attorney to compel the enforcement of a state criminal statute which provided criminal penalties for non-support. She alleged that the prosecutor's refusal to prosecute was the result of a policy of discrimination against unwed mothers. In reaching the conclusion that the plaintiff lacked standing, the Court observed that the plaintiff "failed to allege a sufficient nexus between her injury and the government action which she attacks to justify judicial intervention." *Id.* at 617–18, 93 S.Ct. at 1149. If the plaintiff in *Linda R.S.* were to have been granted the relief that she requested, the jailing of the father might have resulted, but not the payment of child support. Therefore, the prosecution of the father would not have redressed the mother's injury. As the Court stated, the plaintiff must have a "personal stake" in the outcome of the controversy. She must show "some threatened or actual injury resulting from the putatively illegal action...." *Id.* at 617, 93 S.Ct. at 1148.

Accepting the truth of the allegations of the complaint in this case for purposes of discussion, the plaintiffs all sustained legally cognizable injuries as a result of the sexual attacks directed against them. These injuries, however, are not "fairly traceable" to the alleged inadequate investigations by the defendants or the failure of the State's Attorney of Worcester County to prosecute for these crimes. Even if

the investigations were as thorough as the plaintiffs allege they should have been and even if the prosecutions were conducted, the injuries of plaintiffs would not have been redressed. *See Valley Forge College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982). The judicial system affords plaintiffs the opportunity to pursue private tort remedies against the perpetrators to compensate them for their injuries. Even if plaintiffs wish to press criminal prosecutions, notwithstanding the Worcester County State's Attorney's refusal to do so, they are entitled to present their cases personally to a Maryland grand jury. *See Brack v. Wells,* 184 Md. 86, 40 A.2d 319 (1944). They do not, however, have the right to compel an investigation or prosecution by public officials based on their belief that the investigations were inadequate and the fact that the prosecutions were refused. The interest in such investigations and prosecutions belongs to the community at large and is exercised by duly elected and designated representatives acting in their discretion. Therefore, the plaintiffs lack standing, and Count I must be dismissed.

### III

### IMMUNITY

■ All defendants are public officials who are sued for conduct performed in their official capacities. In addition to the allegations of the complaint, which describe conduct pursued by the defendants in their official capacities, counsel for the plaintiffs at oral argument on April 20, 1990, confirmed that the claims were indeed directed against the defendants in their official capacities. Therefore, the suit against the State's Attorney for Worcester County, who is a state official, is barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (absent consent or waiver, the Eleventh Amendment bars a damages action in federal court against a state or state officials acting in their official capacity). *See also Will v. Michigan Dept. of State Police,* —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (state official acting in official capacity is not a "person" under 42 U.S.C. § 1983). Even if counsel had misspoken and the State's Attorney was sued in his individual capacity, his conduct would still be absolutely immune under prosecutorial immunity.

In the original complaint the plaintiffs sued the State's Attorney for Worcester County essentially for his refusal to prosecute the crimes alleged. Giving effect to the absolute immunity afforded to prosecutors in their prosecutorial functions, the Court, by order dated June 5, 1989, dismissed all claims in the original complaint against the State's Attorney for Worcester County with leave to amend, subject to the following restrictions:

> The claims of plaintiffs complaining of the decisions by the State's Attorney to prosecute or not to prosecute or of any policy relating to guidelines for prosecuting or not prosecuting cases and the claims relating to the wrongful prosecution of Jane Doe No. 3 are barred by absolute immunity, and leave is not granted to amend to include such claims. Claims of the plaintiffs that the State's Attorney failed to preserve evidence or interfered with investigations or potential investigations of law enforcement agencies or that it abused its own investigatory procedures are not barred by absolute immunity and may be included in the amended complaint ...

*See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (a state prosecutor is absolutely immune from civil suit for damages under 42 U.S.C. § 1983 in initiating a prosecution and in presenting the state's case).

In the amended complaint filed pursuant to the June 5 order, the State's Attorney for Worcester County is sued in Count I for his participation in inadequate investigations and his refusal to prosecute and, in Counts II and III, for his participation in the prosecution and arrest of Jane Doe No. 3 for making a false statement. The plaintiffs, however, have not substantially or factually added to the allegations of the original complaint. In a cursory manner, the plaintiffs allege that the State's Attor-

ney for Worcester County participated in all of the investigations described in the complaint. These investigations, however, were initiated only to determine whether prosecutions should ensue based on the complaints of plaintiffs. Factual allegations in the complaint are limited to general charges that the investigations were inadequate, the investigating parties were inadequately trained, and, in one particular circumstance, some clothes retained for evidence were lost. No allegation is made that the State's Attorney conducted an investigation other than as necessary to determine whether to prosecute. Indeed, the essence of plaintiffs' charges is that an adequate investigation would have led to the conclusion that prosecutions were appropriate. This is confirmed in paragraph 16 of the amended complaint where the plaintiffs specifically allege:

> 16. As a policy with reference to sex crimes, the State's Attorney's Office fails and refuses to adequately investigate such crimes. *Such investigation being inexorably bound up with the ultimate prosecution of such crimes, an inadequate investigation or investigatory misconduct necessarily leads to the decision not to prosecute.* (Emphasis added.)

The investigations thus described were alleged to be necessary to decide whether to prosecute.

In holding that the function of a state prosecutor in initiating and presenting the state's case is absolutely immune from civil liability under 42 U.S.C. § 1983, the Supreme Court in *Imbler* invited an analysis that seeks to distinguish between absolutely immune conduct of the prosecutor characterized by his role as advocate for the state and conduct that casts him "in the role of an administrator or investigative officer." 424 U.S. at 430–31, 96 S.Ct. at 995. The Court explained:

> We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required constantly, in the course of his duty as such, to make

decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present. Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence. At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. Drawing a proper line between these functions may represent difficult questions, but this case does not require us to anticipate them.

424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. Thus, when the State's Attorney obtains, reviews and evaluates evidence *for the purpose of deciding whether to prosecute,* these actions may be considered prosecutorial functions protected by absolute immunity.

While the line between investigations that are necessarily bound up in the prosecutorial function and those that are not can become murky, *see Pachaly v. City of Lynchburg,* 897 F.2d 723 (4th Cir.1990), the allegations in the amended complaint in this case eliminate the need for making that delineation. Because all investigatory conduct of the State's Attorney for Worcester County is alleged to be part of the prosecutorial function, that conduct is absolutely immune from suit.

In addition to the claims against the State's Attorney based on his role in investigations, which will be dismissed as the result of this Opinion, the charges against him based on decisions not to prosecute or on alleged discriminatory prosecutorial decisions were dismissed as directed by the Court in its June 5 order.

## IV

## JANE DOE NO. 3 VS. OCEAN CITY

 The only claim that remains after the Court's order of June 5, 1989, and after

applying the decisions made today, is the claim by Jane Doe. No. 3 against the Mayor and City Council of Ocean City (based on conduct of its police department) for "false imprisonment" in connection with the charge that she made a false statement. Ocean City contends that summary judgment should be granted in its favor because Jane Doe No. 3 admitted to making a false statement to the police in connection with her rape complaint to the police. While she continues to maintain that she was raped, she now admits that in reporting the rape she falsely described the location of the rape as taking place in her car, when in fact it took place in her apartment, where she voluntarily permitted her attackers to enter. She justifies the falsification on the grounds that she would not have been believed had she confessed to having admitted men voluntarily to her apartment. In her response to the summary judgment papers, she contends that the false statement was not one that violates state law, and that therefore, the Ocean City police had no probable cause to arrest her. *See Johnson v. State*, 75 Md.App. 621, 542 A.2d 429 (1988) (a false statement to police prohibited by Md.Ann.Code art. 27, § 150, is one which causes the police to conduct investigations that divert them from their proper duties and does not include every lie made to the police).

Because all federal claims have been dismissed and this remaining state claim involves issues peculiar to state law relating to the nature of the criminal offense with which Jane Doe. No. 3 was charged, the elements of probable cause for issuing the charges, and state law immunity, the Court declines to exercise pendent jurisdiction over this state claim. It will therefore be dismissed, without prejudice. *See Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, for the reasons given in this Opinion, the Court will issue a separate Order dismissing all claims.

### ORDER

For the reasons given in the Opinion entered this date, it is hereby ordered this 31st day of August, 1990, that:

1. The motion of the Mayor and City Council of Pocomoke City to dismiss is granted and the amended complaint to the extent it is directed against Pocomoke City is dismissed.

2. The motion of the State's Attorney for Worcester County to dismiss is granted and the amended complaint to the extent it is directed against him and his office is dismissed.

3. The motion of the Mayor and City Council of Ocean City for summary judgment is granted in part and denied in part. All claims against Ocean City are dismissed except for the claim by Jane Doe No. 3 for "false imprisonment." As to that claim the court declines to exercise subject matter jurisdiction over it. That claim is therefore dismissed without prejudice to any subsequent pursuit of that claim in the state courts.

4. The Clerk of the Court is directed to mail a copy of this Order and the Opinion entered this date to all counsel of record and to close this case.