TACHA, Chief Circuit Judge,
dissenting. EBEL and KELLY, Circuit Judges, joining in the dissent.
I concur in part and dissent in part. Specifically, I concur with the majority opinion that the supermajority requirement does not violate the First Amendment, but I respectfully dissent with regard to the conclusion that the Plaintiffs have standing to press their First Amendment claims.[1] To establish an injury in fact for purposes of standing, “a party must first and foremost establish [1] an invasion of a legally protected interest [2] that is concrete, particularized, and [3] actual or imminent.” Nat’l Council for Improved Health v. Shalala, 122 F.3d 878, 883 (10th Cir.1997). In this case, I would hold that the Plaintiffs’ alleged injury does not constitute an invasion of a legally protected interest.
As an initial matter, it is highly doubtful that the Plaintiffs have alleged anything more than a “subjective chill.” Nevertheless, the majority holds otherwise because (1) the Plaintiffs’ past conduct in preparation for or support of wildlife initiatives supports the inference that they would do so in the future, (2) the evidence suggests a desire to mount wildlife management initiatives campaigns in Utah, and (3) the supermajority voting requirement stands in the way of any specific plans to pursue similar initiatives. Maj. Op. at 1090-92. Yet puzzlingly, not a single Plaintiff has ever brought a wildlife management initiative in Utah, nor has a single Plaintiff elucidated any concrete plans to do so now or in the future. As the majority correctly notes: “Plaintiffs do not tell us precisely what initiatives they would bring, or when; nor do they claim any certainty about their intentions.” Maj. Op. at 1091-92. Nor do the Plaintiffs even give us so much as an intimation. A future initiative that may or may not be undertaken is precisely the type of conjectural and hypothetical situa *1106 tion that fails to confer standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).[2]
The majority characterizes the Plaintiffs’ injury as “a chilling effect on speech in suppox-t of wildlife initiatives in Utah.” Maj. Op. at 1088. But the mere claim of First Amendment “chill” is not, and has never been, sufficient to establish an injury in fact. See Laird v. Tatum, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (“Allegations of a subjective ‘chill’ are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.”); Nat'l Student Ass’n v. Hershey, 412 F.2d 1103, 1113—1114 (D.C.Cir.1969) (“not ... every plaintiff who alleges a First Amendment chilling effect and shivers in court has thereby established a case or controversy.”). Rather, a “[cjhilling effect is cited as the reason why the governmental imposition is invalid rather than the harm which entitles the plaintiff to challenge it.” United Presbyterian Church in the U.S.A. v. Reagan, 738 F.2d 1375, 1378 (D.C.Cir.1984),
Be that as it may, when confronted with an assertion of First Amendment “chill,” we must look to the underlying cause of the “chilling effect” in order to determine whether it constitutes an invasion to a legally protected interest. See D.L.S. v. Utah, 374 F.3d 971, 975 (10th Cir.2004) (stating that to amount to an injury, the chilling effect “must arise from an objectively justified fear of real consequences”). For example, frequently in “chill” cases, First Amendment activities are stymied by a ci'edible threat of criminal prosecution. See, e.g., Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1229 (10th Cir.2005); Ward v. Utah, 321 F.3d 1263, 1267 (10th Cir.2003); Wilson v. Stocker, 819 F.2d 943, 946-47 (10th Cir.1987). Other examples include “chill” that is caused by the threat of civil liability, see New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), or “chill” that is caused by the threat of damage to personal and professional reputation, see Meese v. Keene, 481 U.S. 465, 473, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987). These potential harms ai*e all properly recognized as invasions of legally protected interests that give rise to a cognizable claim of First Amendment “chill.”
*1107 The cause of the Plaintiffs’ “chill” in this case, however, is fundamentally different from the aforementioned cases. Enforcement of the supermajority requirement may diminish the Plaintiffs’ ability to pass legislation, but that prospect is not what causes the Plaintiffs’ unwillingness to speak. To the contrary, the cause of this unwillingness is the Plaintiffs’ subjective determination that speaking out on wildlife matters is not worth their time and energy unless the line drawn for passing an initiative is precisely where they want it — here, at 50.1% rather than at 66%.[3] Unlike typical “chill” cases in which the plaintiffs face a credible threat of real consequences if they choose to engage in the regulated conduct, in this case the “chill” arises only from the Plaintiffs’ subjective sense of futility as to the efficacy of their speech.
Indeed, the Supreme Court faced a similar claim of subjectively derived injury in McConnell v. Federal Election Commission, 540 U.S. 93, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003). The plaintiffs in that case raised an equal protection challenge to an increase in campaign contribution limits. Their claimed injury was that the statute “deprive[d] them of an equal ability to participate in the election process based on their economic status.” Id. at 227, 124 S.Ct. 619. Turning to the “nature and source of the claim asserted,” the Court noted that it had “never recognized a legal right comparable” to the injury allegedly suffered by the plaintiffs. Id. It distinguished prior voting-rights cases and called the plaintiffs’ reliance on them “misplaced.” Id. The Court went on to emphasize that “[pjolitical 'free trade’ does not necessarily require that all who participate in the political marketplace do so with exactly equal resources.” Id. (quoting Fed. Election Comm’n v. Mass. Citizens for Life, Inc., 479 U.S. 238, 257, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986)). Therefore, the Court concluded that “[t]his claim of injury by the ... plaintiffs is ... not to a legally cognizable right,” and it dismissed the suit for want of standing. Id.
Despite this language, the majority asserts that the Court did not specify whether the plaintiffs lacked standing because they failed to allege a “concrete and particularized” injury or because their injury was not to a “legally protected interest.” Maj. Op. at 1097. It therefore “read[s] the decision as resting not on the legal deficiency of the claim but on the breadth, generality, and diffuse character of the alleged injury.” Maj. Op. at 1097. I *1108 think, however, that the Court said what it meant and meant what it said, and that the Court’s holding that the plaintiffs’ alleged injury is “not to a legally cognizable right” requires no interpretation.
In part because the majority reads McConnell as holding that the plaintiffs failed to allege a concrete and particularized injury, it is able to overrule this Court’s decision in Skrzypczak v. Kauger, 92 F.3d 1050, 1053 (10th Cir.1996). Although decided seven years before McConnell, Skrzypczak undertook the same type of analysis and denied the plaintiff standing when she failed to allege the invasion of a legally protected interest. Id. at 1053.
In that case, Ms. Skrzypczak argued that her ability to speak her mind on the issue of abortion was curtailed by the Oklahoma law that subjected initiative proposals to constitutional review prior to their placement on the ballot. Specifically, after a proposal criminalizing most abortions was found by the Oklahoma Supreme Court to be incompatible with the Constitution and was therefore prohibited from being put to a popular vote, Ms. Skrzypc-zak challenged the Oklahoma Supreme Court’s decision as an impermissible prohibition on speech. Significantly, her claimed injury was based solely on allegations that she would have advocated for the passage or defeat of the proposition had it been placed on the ballot. Id. at 1052. Unlike typical initiative regulation cases involving First Amendment claims, Ms. Skrzypczak specifically denied any involvement in the effort to place the initiative on the ballot. She merely alleged that the decision by the Oklahoma Supreme Court constituted a prior restraint on her speech because she wanted to engage in speech activity related to the proposed initiative.
As noted above, we dismissed the suit for lack of standing. We held that Ms. Skrzypczak had not established an injury in fact because her ability to express her opinion was not impaired by the pre-sub-mission review, and therefore, she had failed to allege an injury to a legally protected interest:
Skrzypczak mistakenly conflates her legally-protected interest in free speech with her personal desire to have SQ 642 on the ballot. In removing SQ 642 from the ballot, the Oklahoma Supreme Court has not prevented Skrzypczak from speaking on any subject. She is free to argue against legalized abortion, to contend that pre-submission content review of initiative petitions is unconstitutional, or to speak publicly on any other issue. Her right to free speech in no way depends on the presence of SQ 642 on the ballot. Moreover, she cites no law, and we find none, establishing a right to have a particular proposition on the ballot.
Skrzypczak, 92 F.3d at 1053.
Although Skrzypczak did not say so explicitly, the clear import of that case was that because the source of Ms. Skrzypc-zak’s unwillingness to speak was Ms. Skrzypczak herself rather than the threat of actual consequences if she did in fact speak, she had not alleged any invasion of a legally protected interest. By comparison, standing exists in “chill” cases that involve a double edged-sword where individuals seeking to exercise First Amendment rights face, for example, criminal or civil liability or damage to personal or professional reputation, and therefore must choose between engaging in the regulated speech and suffering the consequences or remaining silent. First Amendment standing jurisprudence recognizes that neither result is desirable.[4] But *1109 the law at issue in Skrzypczak presented no such choice. Ms. Skrzypczak chose not to speak on abortion not because of a fear of enforcement consequences that might accrue to her if she exercised her right, but rather because she would not find speaking on the issue personally satisfying without a specific initiative on the ballot. That is not sufficient to establish the invasion of a legally protected interest because the law neither guarantees nor protects a plaintiffs interest in personal satisfaction. Cf. McConnell, 540 U.S. at 227, 124 S.Ct. 619 (no legally protected interest in competing in the political marketplace with exactly equal resources); Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (no legally protected interest in the prosecution of another); see also United Presbyterian Church, 738 F.2d at 1378 (stating that “[a]ll of the Supreme Court cases employing the concept of ‘chilling effect’ involve situations in which the plaintiff has unquestionably suffered some concrete harm ... apart from the ‘chill’ itself.”) (emphasis added).[5]
The majority now overrules Skrzypczak, arguing that the question cannot be whether the defendants’ action violates the Constitution because “[i]f that were the test, every losing claim would be dismissed for want of standing.”[6] Maj. Op. at 1092. As discussed above, this argument misses the reasoning behind Skrzypczak. Again, although the Court in Skrzypczak discussed whether the Oklahoma law prohibited speech, the real focus of the case was on the consequences (or lack thereof) that would befall Ms. Skrzypczak is she exercised her First Amendment rights: We concluded that Ms. Skrzypczak had not alleged a legally protected interest because unlike a plaintiff who alleges a fear of prosecution or other enforcement consequences that might directly accrue to the plaintiff due to the operation of the challenged law, the source of Ms. Skrzypczak’s alleged “chill” was her own subjective determination as to the efficacy of her speech. Cf. McConnell, 540 U.S. at 227, 124 S.Ct. 619 (no legally cognizable right for those “who participate in the political marketplace [to] do so with exactly equal resources.”). Accordingly, I respectfully dissent with regard to the conclusion that Skrzypczak should be overruled.[7]
*1110 Because I do not agree that Skrzypczak was wrongly decided, I believe that it controls the outcome of this case. The Plaintiffs’ averment that “political speech is lessened by the supermajority requirement,” may be true, but it is only as a result of the Plaintiffs’ internal perception of the difficulty they face in achieving a self-defined measure of political success. An assertion that a government action instills a sense of subjective futility — in the sense that one’s speech will not have a desired result — does not constitute an invasion of a cognizable legal interest. I respectfully dissent with the majority’s conclusion that the Plaintiffs have standing.

. Of course, because I conclude that the Plaintiffs do not have standing, reaching the merits is unnecessary to the disposition of this appeal. Nevertheless, I join Part III of the majority opinion so that the Court may speak more clearly on this important issue.

. None of the evidence suggests actual or imminent injury. General statements from organizations that they accomplish their aims through initiative and legislation, and have done so in other states, say nothing about a present intent to bring similar initiatives in Utah. The fact that one of the Plaintiffs helped to commission a public opinion survey of Utah voters to consider the feasability of a ballot initiative in 1991, seven years before passage of the supermajority requirement, suggests just the opposite — no current plans to pursue such an initiative. The Plaintiffs' statements foreseeing the use of such initiatives (either for substantive purposes or as a bargaining tool) omit the obvious: when, where and for what? Likewise, the statements by various Plaintiffs — that they will not participate in the wildlife initiative process because the supermajority requirement makes it futile — -simply lack any semblance of specificity as to any particular actions contemplated.
Although the standing inquiry was resolved on a motion to dismiss, the district court also properly considered affidavits which should have incorporated specific facts supporting standing. See Warth v. Seldin, 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Plaintiffs had the burden of sufficiently alleging facts concerning standing; Lujan, 504 U.S. at 561, 112 S.Ct. 2130; the facts did not materialize thereby warranting dismissal of the complaint. See Warth, 422 U.S. at 502. While the facts must be construed in the light most favorable to the Plaintiffs, we are required to consider only reasonable inferences. In my view, it is unreasonable to conclude that the Plaintiffs have standing because initiatives have been pursued in other states, or because the Plaintiffs hold strong opinions about these issues.

. A hypothetical further underscores the nature of the Plaintiffs' injury. Citizens’ Organization wishes to use the initiative process to pass Proposition X. Polling reveals Proposition X will only be supported by thirty percent of the population of Utah. Citizens' Organization claims that the election procedure requiring a simple majority vote for passage "chills'' its speech. Under the majority's approach, this "chill" Constitutes an invasion of a legally protected interest and Citizens’ Organization would have standing to challenge the procedure so long as it credibly alleges that it has engaged in the initiative process in the past, states its present desire to bring Proposition X before the voters, and claims that it presently has no intention to do so because of the "credible threat” that the majority requirement will be enforced.
As this example demonstrates, despite Citizens' Organization’s claims of First Amendment "chill,” the reality is that Citizens’ Organization's desire to promote Proposition X is hindered not by the operation of the simple majority requirement, but by its subjective calculation of the economic merits of advancing a cause that may not result in a fulfilling outcome. As in the hypothetical, the majority's conclusion here that the Plaintiffs' alleged "chill” constitutes an injury in fact only makes sense if one accepts the implicit assumption that Plaintiffs' expectation of electoral efficacy is a legally protected interest. This assumption, however, does not find support in the case law.

. As the majority notes, this insufferable choice is precisely why plaintiffs have standing in "chill” cases despite the presence of only an inchoate injury. See Maj. Op. at 1088.

. The majority cites to a host of cases in which Courts of Appeals have reached the merits of similar inquiries after "consider[ing] this argument” and "reject[ing] it.” Maj. Op. at 1095. With respect, I note that all the cases cited by the majority passed on the standing question sub silencio, and the courts are therefore not bound by their implicit resolution of the issue. Cf. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 119, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (a court is not bound by jurisdictional issues not addressed in prior opinions).

. I agree with the majority’s observation that simply because a claim is novel or without precedent, a court may not dismiss the claim for lack of standing. The minimal constitutional requirement that a claim arise from an invasion of a legally protected interest, however, does not prejudge the merits of the claim. In this way, I disagree with the majority’s assertion that "this case differs from that in Buckley [v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam),] only because it is more far-fetched.” Maj. Op. at 1093. To begin, there is no question that the plaintiffs in Buckley alleged an injury that invaded a legally protected interest. The prospect of criminal penalties for making illegal campaign contributions is clearly an injury to an interest that the law recognizes. But the question at issue here is not the relative novelty of the Plaintiffs’ claims as to the scope of the protection afforded by the First Amendment, but, rather, whether or not the Plaintiffs’ claimed injury invades a legally protected interest at all.

.I also note that no party to this dispute asked this Court to review its decision in Skrzypczak, no party questioned its continuing validity, and the resolution of the issue does not affect the outcome of the case before us.