# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2610

_____

Ross Parkhurst, individually and as          *
guardian and next friend of H. P.; Amy       *
Parkhurst, individually and as guardian      *
and next friend of H. P.; H. P., a minor     *
child under the age of eighteen,             *
                                             *
      Plaintiffs - Appellants,           *
                                             *
                                             *    Appeal from the United States
      v.                                 *    District Court for the
                                             *    Western District of Arkansas.
Stephen Tabor, individually and in his       *
official capacity as Prosecuting             *
Attorney for the Twelfth Judicial            *
District, Sebastian County, State of         *
Arkansas; Daniel Shue, individually          *
and in his official capacity as Chief        *
Deputy Prosecuting Attorney for the          *
Twelfth Judicial District, Sebastian         *
County, State of Arkansas; County of         *
Sebastian, a body corporate and politic      *
in the State of Arkansas,                    *
                                             *
      Defendants - Appellees.            *

_____

Submitted: May 13, 2009
Filed:  June 25, 2009

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Ross and Amy Parkhurst, the adoptive father and biological mother of H.P., a minor child, asserted claims as next friend under 42 U.S.C. § 1983 against Arkansas state prosecutors Stephen Tabor and Daniel Shue, and Sebastian County, Arkansas. The Parkhursts alleged a violation of H.P.'s right to equal protection under the Fourteenth Amendment based on Tabor and Shue's decision to issue a nolle prosequi[1] and forego prosecution of H.P.'s biological father for the felony sexual assault of his daughter. The district court[2] dismissed the case under Rule 12(b)(6) for failure to state a claim. The Parkhursts appeal, arguing that the Fourteenth Amendment guarantees to crime victims the nondiscriminatory prosecution of crime. We affirm.

I.

When a district court dismisses a claim under Rule 12(b)(6) we examine the facts alleged in the complaint. See Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). Amy Parkhurst and Chad Belt married in Arkansas in 1993, and their daughter H.P. was born in 1994. When the couple divorced in 2000, Amy Parkhurst was awarded sole custody while Belt was granted visitation rights. Shortly thereafter Amy Parkhurst relocated to Arizona with H.P. and married Ross Parkhurst.

H.P. first visited Belt in Arkansas for an extended period of time during the summer of 2001 when she was seven. After returning to Arizona H.P. begged her mother not to require her to visit her biological father again. When Belt arrived in Arizona the following summer to take H.P. back to Arkansas, she became emotionally

---

[1]A legal notice that a lawsuit has been abandoned. Black's Law Dictionary 1070 (7th ed. 1999).

[2]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

overwrought and was allowed to skip the visit. Belt insisted that H.P. resume visitation in 2003, however, and H.P. spent seven weeks in Arkansas with him when she was nine. Amy Parkhurst spoke regularly to H.P. that summer and reported that her daughter seemed increasingly uncomfortable and emotional as the summer progressed.

On July 21, 2003 H.P. telephoned her mother from Arkansas and informed her that she had injured her genitals in a diving board accident and was bleeding vaginally. Two days later Amy Parkhurst traveled to Arkansas to investigate the nature of H.P.'s injuries and to procure medical treatment for her daughter since Belt had not. Upon Amy Parkhurst's arrival, H.P. informed her that she had injured both her "bottom" and her vagina. Between July 23 and 28 H.P. was examined at three separate medical facilities in Arkansas and Oklahoma. Although H.P. continued to insist that she had been injured in an inconsistently described accident, all medical personnel diagnosed H.P. as a potential victim of sexual abuse. The matter was referred to the Crimes Against Children Division of the Arkansas State Police which determined that H.P. had been sexually abused but noted that she feared identifying the perpetrator.

Shortly after H.P. and her mother left Arkansas for Washington state, where the Parkhursts had relocated, Belt spontaneously offered to relinquish his parental rights to H.P. if the Parkhursts would sign a statement that they were not accusing him of molesting the girl. The Parkhursts executed the requested document and Belt consented to the termination of his parental rights. Thereafter Ross Parkhurst began proceedings to adopt H.P., and H.P. sought and received assurance that she would not have to visit Belt in the future. Several days after the adoption ceremony, H.P. disclosed that Belt had raped her during the summers of 2001 and 2003. Belt was arrested by the Sebastian County, Arkansas police and charged with felony sexual assault on December 5, 2003.

Chief Deputy Prosecuting Attorney Tabor and Prosecuting Attorney Shue were assigned to the case. The prosecutors expressed confidence in the overwhelming evidence against Belt. Shue stated, however, that as a matter of policy his office was reluctant to prosecute sexual abuse perpetrated by a close relative. As he put it, "no one wants these [incest] cases" and his office "would prefer not to prosecute such a case if it could find a reason not to." In their appellate brief Tabor and Shue suggested that victims of incest make "hesitant" and "incredible" witnesses and that the department prioritizes "other types of cases" as a result. Shue acknowledged that in this respect the departments' approach to incestuous assault differs from its approach to other sexual assault cases.

The Parkhursts claim that as a result of this policy Tabor and Shue sought a pretext for abandoning the Belt prosecution. Under Arkansas law the result of a polygraph test is inadmissible in a criminal proceeding unless the parties stipulate to its admissibility. The Parkhursts allege that Tabor and Shue were aware that an agreement to administer a polygraph examination and to stipulate that the result would be admissible was contrary to sound prosecutorial policy because the perpetrator of a sex crime is often able to pass a polygraph test. Despite their alleged knowledge that it would be inadvisable, Tabor and Shue arranged for the administration of a polygraph exam to Belt and stipulated that the results would be admissible in court. On March 4, 2004 Belt took a polygraph test. The examiner posed only three relevant questions: (1) "Did you ever have sexual contact with [H.P.'s] private area?" (2) "Have you ever had sex with [H.P]?" and (3) "Is [H.P.] telling the truth about you having sex with her?" Belt was not asked about H.P.'s alleged diving board injury or the circumstances surrounding his offer to terminate parental rights. The polygraph examiner informed Tabor on March 16 that Belt "ha[d] been truthful in answering the . . . questions."

Several months later Tabor and Shue informed the Parkhursts by letter that they intended to issue a nolle prosequi as a result of the polygraph examination:

[We are] convinced that the event occurred and, under normal conditions, would have no compunction whatsoever in proceeding to trial in this matter. However, . . . [i]n this case, because of the stipulated polygraph examination results, it is [our] belief that a grand jury would not convict the Defendant, Chad Belt . . . .

That same day Tabor and Shue issued the nolle prosequi and suspended the Belt prosecution.

On June 6, 2007 the Parkhursts brought a § 1983 action on H.P.'s behalf against Tabor and Shue, in both their official and individual capacities, and against Sebastian County, Arkansas, alleging a violation of H.P.'s right to equal protection.[3] The Parkhursts asserted that H.P. was discriminated against as a member of a disfavored class they defined as victims of incestuous sexual abuse. They sought damages, an injunction requiring the reinstatement of the charges against Belt, and a declaratory judgment that the challenged prosecutorial policy violated the equal protection clause by failing to provide to victims of incest the same protection offered to other victims of sexual assault.

Tabor, Shue, and the county moved to dismiss for failure to state a claim, arguing that as victims the Parkhursts lacked standing to subject state prosecutorial decisions to constitutional scrutiny. The district court granted the motion, explaining that prosecutorial conduct may only be subjected to such review by those with a constitutional right to the nondiscriminatory prosecution of crime. That right, according to the district court, rests with defendants subjected to discriminatory prosecution but does not accrue to the victims of crime. The Parkhursts appeal,

---

[3]The complaint also included state claims against Belt for battery and outrage. Those claims were tried before a jury which found Belt liable for sexually abusing H.P. and awarded the Parkhursts $250,000 in compensatory damages and $750,000 in punitive damages. We recently affirmed that judgment on appeal. See Parkhurst v. Belt, No. 08-2668, 2009 WL 1586981 (8th Cir. June 9, 2009).

arguing that the district court erred in dismissing their suit because the Fourteenth Amendment guarantees to crime victims the nondiscriminatory prosecution of crime.

## II.

We review de novo a district court's grant of a 12(b)(6) motion to dismiss. Botz v. Omni Air Int'l, 286 F.3d 488, 491 (8th Cir. 2002). In doing so we must accept as true the plaintiff's well pleaded allegations. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). To survive a motion to dismiss, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007).

Article III of the United States Constitution restricts the jurisdiction of the federal courts to actual cases and controversies. The case or controversy requirement has been effectuated by several doctrines, the most important of which is standing. Allen v. Wright, 468 U.S. 737, 750 (1984). To establish constitutional standing "the plaintiff must show that it has suffered an 'injury in fact' that is: concrete and particularized and actual or imminent; fairly traceable to the challenged action of the defendant; and likely to be redressed by a favorable decision." United States v. United Sec. Sav. Bank, 394 F.3d 564, 567 (8th Cir. 2004) (per curiam) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

Consistent with these principles, crime victims have standing to challenge allegedly discriminatory prosecutorial conduct only if those victims have a constitutional right to the nondiscriminatory prosecution of crime such that its deprivation constitutes injury in fact. Cf. Linda R.S. v. Richard D., 410 U.S. 614, 617 (1977). To put it another way, the Parkhursts have standing to sue prosecuting authorities only if the discriminatory treatment they allege implicates the protections of the Fourteenth Amendment. While it is well settled that defendants subjected to or threatened with discriminatory prosecution have standing to bring an equal

protection claim, see Linda R.S., 410 U.S. at 619 & n.5, this right has not been extended to crime victims.

In Linda R.S. the mother of an illegitimate child who was owed support payments sued on behalf of herself and all others similarly situated to enjoin the discriminatory application of a Texas statute criminalizing the failure to pay child support. 410 U.S. at 614-15. Although the text of the statute did not appear to distinguish between illegitimate and legitimate children, it had been construed by the courts of the state to apply only to parents of legitimate children. Id. at 615. Linda R.S. argued that this interpretation discriminated between legitimate and illegitimate children without a rational basis and therefore violated the equal protection clause. Id. at 616.

The Supreme Court concluded that Linda R.S. lacked standing to bring suit, explaining that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Id. at 619. The absence of this right, according to the Court, stems from the "special status of criminal prosecutions in our system," which rejects a "direct nexus between the vindication of [victims'] interest[s] and enforcement of the State's criminal laws." Id.

The lower federal courts have maintained the distinction in standing between those prosecuted by the state and those who would urge the prosecution of others, even when the failure to prosecute was allegedly discriminatory. See United Sec. Sav. Bank, 394 F.3d at 567 ("private citizen generally lacks standing" to subject prosecutorial decisions to scrutiny); United States v. Grundhoefer, 916 F.2d 788, 791 (2d Cir. 1990) ("direct, distinct, and palpable injury in a criminal sentencing proceeding plainly falls only on the defendant who is being sentenced" thus private citizens cannot challenge decisions of prosecuting authority); Sattler v. Johnson, 857

F.2d 224, 227 (4th Cir. 1988) (victims lack constitutional right under equal protection clause to compel criminal prosecution); <u>Doe v. Mayor and City Council of Pocomoke City</u>, 745 F. Supp. 1137, 1139 (D. Md. 1990) ("The Court is not aware of a constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime."). A leading legal commentator on constitutional issues agrees. <u>See</u> Laurence H. Tribe, <u>American Constitutional Law</u> 124 (2d ed. 1988) ("the interest in the just administration of the laws, including the interest in nondiscriminatory criminal enforcement, is presumptively deemed nonjusticiable even if invoked by persons with something beyond a generalized bystander's concern; only if the litigant is immediately affected as a target of enforcement can that presumption be overcome").

The Parkhursts point to several cases where crime victims were determined to have a right to challenge the allegedly discriminatory provision of police protection. <u>See, e.g.</u>, <u>Estate of Macias v. Ihde</u>, 219 F.3d 1018 (9th Cir. 2000); <u>Thurman v. City of Torrington</u>, 595 F. Supp. 1521 (D. Conn. 1984). In <u>Macias</u>, family members of a slain woman brought a § 1983 suit alleging that police officers had ignored repeated complaints of threatened violence and provided "inferior police protection" because the decedent was a member of a disfavored class of victims, thereby violating the Equal Protection Clause. 219 F.3d at 1019. The Ninth Circuit concluded, without reaching the merits, that "[t]here is a constitutional right [] to have police services administered in a nondiscriminatory manner - a right that is violated when a state actor denies such protection to disfavored persons." <u>Id.</u> at 1028. When faced with a similar allegation of discriminatory police protection, the district court in <u>Thurman</u> determined that "[p]olice action is subject to the equal protection clause and section 1983 whether in the form of commission of violative acts or omission to perform required acts pursuant to the police officer's duty to protect." 595 F. Supp. at 1527.

The Parkhursts claim to have been injured by a failure to prosecute Belt rather than by a failure to provide police protection to H.P., and they point to no cases which

have recognized a right to compel prosecution of a wrongdoer. That the standing analysis differs depending on whether the alleged injury arises from a failure to prosecute or a failure to protect is not without rationale. While police officers are under a "statutorily imposed duty to enforce the laws equally and fairly," Thurman, 595 F. Supp. at 1527 (quoting Smith v. Ross, 482 F.2d 33, 36 (6th Cir. 1973) (per curiam)), "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion," United States v. Batchelder, 442 U.S. 114, 124 (1979). The Parkhursts, alleged victims of a discriminatory prosecutorial policy, did not suffer injury in fact as defined by the Supreme Court because they were "neither prosecuted nor threatened with prosecution." Thus, they lack standing to bring this claim against Tabor, Shue, and Sebastian County.[4]

III.

For the foregoing reasons, the judgment of the district court is affirmed.[5]

_____

[4]We note that the Parkhursts are not without other avenues to redress their grievance. Prosecutorial decisions are "discretionary public duties that are enforced by public opinion, policy, and the ballot." Pocomoke City, 745 F. Supp. at 1139.

[5]The motion of Tabor and Shue to strike documents from the appellants' appendix and submission of exhibits is denied as moot.