Dorothy J. THOMAS, Plaintiff,

v.

CHICAGO HOUSING AUTHORITY, a Municipal Corporation; the United States Department of Housing and Urban Development ("HUD"); Former HUD Secretary Jack Kemp and present HUD Secretary Henry Cisneros, Defendants.

No. 95 C 4782.

United States District Court,
N.D. Illinois,
Eastern Division.

March 15, 1996.

1160

Dorothy J. Thomas, Chicago, IL, pro se.

John Kenneth Kallman, Law Offices of John Kenneth Kallman, Chicago, IL, for plaintiff Dorothy J. Thomas.

David Keith Hill, Jordan E. Marsh, Chicago Housing Authority, Office of the General Counsel, Chicago, IL, for defendant Chicago Housing Authority, a Municipal Corporation.

Ann L. Wallace, United States Attorney's Office, Chicago, IL, for defendant Jack Kemp, Secretary.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Dorothy J. Thomas, has filed suit against the United States Department of Housing and Urban Development ("HUD"), former HUD Secretary Jack Kemp, and present HUD Secretary Henry Cisneros [1] (collectively, "federal defendants"), and the Chicago Housing Authority ("CHA" or "state

---

1. The complaint purports to sue defendants Kemp and Cisneros in both their official and individual capacities. Plaintiff's complaint, however, is devoid of any factual allegations regarding specific individual conduct by either of the individual defendants. Consequently, this court analyzes the conduct of each person in his official capacity only.

defendant"), a state housing authority. Both the state and federal defendants have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below both, the federal defendants' motion is granted and the state defendant's motion is granted in part and denied in part.

## Background

Ms. Thomas is a public housing tenant residing in the Cabrini Extension project, one of three projects collectively known as "Cabrini–Green." In her complaint, Ms. Thomas makes numerous allegations.[2] Count one of the complaint alleges the following: 1) the federal and state defendants are charging plaintiff too much rent; 2) the federal and state defendants have rented plaintiff an unsanitary apartment; 3) plaintiff was attacked by another CHA resident on March 11, 1995, and her attacker has not been evicted; 4) the federal and state defendants have denied plaintiff access to common rooms to hold meetings for her various community groups;[3] and 5) the CHA has reduced maintenance services by over 75 percent resulting in unsafe and unsanitary housing conditions.

Intermittently throughout Count one, Ms. Thomas cites 42 U.S.C. §§ 1437, 1437a; 12 U.S.C. § 1701 et. seq.; 42 U.S.C. §§ 1985(2) & (3); and the Fourteenth and Fifth Amendments as the bases for her claims. Ms. Thomas' complaint states that she has lost income, suffered physical pain, emotional distress, mental anguish and humiliation, and been deprived of food and other "vital necessary" [sic] to maintain her welfare. Ms. Thomas seeks $1,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorney fees, her alleged rent overcharge (calculated by plaintiff at $4,790.00) and equitable relief requiring proper maintenance of Cabrini–Green and correction of all housing code violations in all Cabrini–Green apartments.

In count two of the complaint, Ms. Thomas alleges as follows: 1) the CHA and HUD brought a "fraudulent" eviction action against her; 2) the CHA and HUD are demolishing Cabrini–Green buildings in violation of 42 U.S.C. § 1437p; and 3) the state and federal defendants have conspired to charge excessive rent from all CHA residents in violation of 42 U.S.C. § 1437a and 12 U.S.C. § 1701z–11. Count two reiterates the injuries and seeks the same monetary damages as count one.

## Analysis

When deciding a motion to dismiss, the court must accept all well pleaded allegations in the plaintiff's complaint as true. *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991). Any reasonable inferences from those facts must be made in the plaintiff's favor. *Id.* In addition, a *pro se* complaint, "however inartfully pleaded," is held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980). The court's role is to ensure that claims of *pro se* litigants are given "fair and meaningful consideration." *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984). Accordingly, *pro se* complaints must be liberally construed. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The complaint need not specify the correct legal theory, nor point to the correct statute in order to survive a motion to dismiss. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). Finally, a district court may dismiss a complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes, supra,* 449 U.S. at 10, 101 S.Ct. at 176.

---

2. Ms. Thomas has rejected her court-appointed counsel and is proceeding *pro se.* She has filed a 20 page, handwritten complaint, alleging two "counts." The factual allegations plaintiff makes, however, could possibly support more than two claims. Accordingly, this court has addressed as many claims as it can reasonably decipher from the complaint.

3. In this same paragraph, Ms. Thomas has alleged that the defendants have attempted "genocide against Plaintiffs welfar [sic] and the very low income of her Afro–American faimlies [sic] in Cabrini–Green housing Project."

As a threshold matter, I must address what distinction, if any, exists between defendants CHA and HUD. Ms. Thomas' complaint uses these parties interchangeably (and often simultaneously). CHA and HUD, however, play very different roles under the public housing statutory scheme. HUD provides monetary assistance to local public housing agencies ("PHAs"), such as the CHA, for the construction and operation of low-income housing. 42 U.S.C. §§ 1437b–1437i. The PHAs may then charge below-market rent to eligible low income tenants. 42 U.S.C. § 1437a. In exchange for the subsidy, PHAs must comply with federal regulations promulgated by HUD under the United States Housing Act. *See generally,* 42 U.S.C. § 1437 *et seq.* The PHA retains responsibility for managing, maintaining, and operating the housing project. *See* 42 U.S.C. § 1437 ("It is the policy of the United States ... to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs."); 310 ILCS 10/2 (declaring that management responsibility be given to PHAs operating in Illinois).

The CHA is the PHA with jurisdiction over the City of Chicago, managing all public housing in Chicago. Thus the CHA is in charge of operating and managing Cabrini–Green, while HUD provides funds to allow the CHA to rent apartments at reduced rates.[4] Due to the distinction between the CHA and HUD, I address the claims against each defendant separately.

### I. The Federal Defendants—HUD, Jack Kemp, and Henry Cisneros

#### A. Count One

■ Ms. Thomas first alleges that she is being charged a monthly rent that exceeds the statutory limit. The rent formula of the United States Housing Act is supplied by 42 U.S.C. § 1437a. It provides in part:

> [A] family shall pay as rent for a dwelling unit assisted under this chapter ... the highest of the following amounts, rounded to the nearest dollar:
>
> (A) 30 per centum of the family's monthly adjusted income;
>
> (B) 10 per centum of the family's monthly income; or
>
> (C) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payment which is so designated.

42 U.S.C. § 1437a(a)(1).

In her complaint, Ms. Thomas states that she has been charged 25–30 percent of her adjusted[5] income.[6] She contends that it should not exceed 10 percent of her income.

The plain language of the statute indicates that if subsection (c) does not apply, the *higher* rate calculated under subsection (a) or (b) is the maximum rent allowed. Ms. Thomas admits that her rent has been set at 25–30 percent of her adjusted income. The rent she is paying therefore clearly falls within the guidelines provided under Section 1437a. Ms. Thomas repeatedly asserts that as a disabled and very low income person, the 10 percent rate should apply. Neither Ms. Thomas' briefs nor this court's independent review yielded any statutory support for a reduction in public housing rent for very low

---

4. HUD does own and manage some public housing sites. HUD does not, however, manage the operations of Cabrini–Green, and Ms. Thomas has not so alleged. The CHA manages Cabrini–Green.

5. In her complaint, Ms. Thomas does not use the term "adjusted" income when alleging how much rent she has been charged. She does attach a rent calculation to her pleadings, however, which clearly shows that she has been charged 25–30% of her adjusted income. Ms.

Thomas' adjusted income consists of her monthly social security income less $400 because she is elderly. *See* 42 U.S.C. § 1437a(b)(4).

6. The original statutory maximum allowable rental rate was 25 percent. This maximum allowable rate was increased by law in 1981. HUD phased in the increase to avoid having low-income tenants suffer a dramatic rent increase. The increase to 30 percent was fully incorporated by HUD in 1985. *See* 24 C.F.R. § 913.107(b).

income or disabled residents.[7] This claim is therefore dismissed.

■ Ms. Thomas also alleges that the defendants rented her an unsanitary apartment. Ms. Thomas notes the existence of various problems with her apartment, including faulty plumbing, cracked ceiling and floor tiles, and an infestation of mice and roaches. She contends that the state and federal defendants "willfully, intentionally, knowing[ly] or should have known" [sic] of the apartment's condition when she rented it.

This claim must fail against the federal defendants because HUD has no duty to ensure the good conditions of apartments leased by the CHA. HUD does not own or manage Cabrini–Green. Ms. Thomas argues that HUD owes her such a duty based on the policy statement contained in 42 U.S.C. § 1437. While courts have implied private causes of action for certain provisions of the United States Housing Act, the broad policy statement in 42 U.S.C. § 1437 is not among them. *See, e.g., Perry v. Housing Authority of the City of Charleston,* 664 F.2d 1210, 1217 (4th Cir.1981) ("We therefore conclude that § 1437—or the other policy statements, §§ 1441, 1441a—does not create any legally cognizable rights in tenants of programs funded under the housing statutes"); *Hale v. Chicago Housing Authority,* 642 F.Supp. 1107, 1109 (N.D.Ill.1986) (finding no private right of action to enforce HUD regulations governing safety and sanitation in the project). *See also Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 432, 107 S.Ct. 766, 774, 93 L.Ed.2d 781 (1987) (allowing plaintiff to maintain a Section 1983 action to enforce only "sufficiently specific and definite" provisions of the Housing Act). This claim is accordingly dismissed against the federal defendants.

Ms. Thomas next alleges that she was attacked by a CHA resident who was subsequently found guilty of assault but not evicted from public housing. Ms. Thomas asserts that the defendants should have evicted her attacker, but failed to do so.

Ms. Thomas does not explain her exact claim regarding this attack. I interpret it to encompass two potential legal theories. First, plaintiff could be alleging that the defendants are liable for the attack because they negligently provided security. In addition, plaintiff could be demanding that her attacker be evicted.

■ If plaintiff is alleging tortious conduct by the federal defendants for failure to provide adequate security, her claim must be dismissed. To proceed against the federal government in tort, a plaintiff must follow the procedures of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* She must first file her tort claim with the appropriate federal agency. 28 U.S.C. § 2401. If this requirement is not met, the court lacks subject matter jurisdiction over the dispute. *See Charlton v. United States,* 743 F.2d 557, 558 (7th Cir.1984). Ms. Thomas has not alleged that she filed a claim with HUD or otherwise attempted to comply with the FTCA. Consequently, to the extent that Ms. Thomas claims negligence on the part of the federal defendants, her claim is dismissed.

■ If Ms. Thomas is demanding that her attacker be evicted for violating public housing regulations, then her claim must be dismissed because she does not have standing to make this request. In *Linda R. S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), the Supreme Court held that the plaintiff did not have standing to demand that the state enforce its child support law against fathers of illegitimate children. The Court stated that a party:

> lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.... A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.

*Id.* at 619, 93 S.Ct. at 1149. *Linda R. S.* applies to administrative action as well. *See, e.g., Board of Trade of Chicago v. Securities and Exchange Commission,* 883 F.2d 525,

---

**7.** In addition to Section 1437a, Ms. Thomas cites 12 U.S.C. § 1701 *et seq.,* the National Housing Act. This act encourages the private building of low and moderate income housing through the use of federal credit. *See United States v. Winthrop Towers,* 542 F.Supp. 1042, 1044 (N.D.Ill. 1982). It does not apply to this case.

530 (7th Cir.1989) (refusing judicial review of the SEC's decision not to prosecute and noting that courts do not review the decisions of the National Labor Relations Board and Nuclear Regulatory Commission not to prosecute). Courts generally defer to an administrative agencies' discretion on how it uses its resources. *Id.* at 531. In the present case, Ms. Thomas appears to be asking the court to compel the defendants to enforce the housing rules and evict her attacker. She does not have standing to raise this claim. It is therefore dismissed.[8]

■ Lastly, Ms. Thomas alleges that the federal defendants have denied her access to Cabrini–Green common rooms for conducting her community organization meetings.[9] Controlling access to meeting rooms on public housing grounds is a responsibility of the party managing those grounds, *i.e.,* the CHA. Consequently, HUD is not responsible if access to the common rooms has been unlawfully denied. This claim against the federal defendants is dismissed. Accordingly, count I is dismissed *in toto* against the federal defendants.

*B. Count Two*

■ In count two, Ms. Thomas alleges that an eviction suit was "fraudulently" filed against her in state court by the CHA and HUD. Although Ms. Thomas appears to allege that HUD should be held responsible for this action, HUD is not a party to her lease and did not file the eviction action against her.[10] Her claim for "fraudulent" eviction against the federal defendants is therefore dismissed.

Ms. Thomas also alleges in count two that the defendants are demolishing buildings in the Cabrini–Green project in violation of 42 U.S.C. § 1437p. Specifically, plaintiff contends that before a public housing building can be demolished, the defendants must: 1) have a replacement apartment in place for each unit to be demolished; 2) prove that the units to be demolished are "unrepairable"; and 3) have the consent of the community.

■ Ms. Thomas does not have standing to contest the demolition of those buildings. To have standing, Ms. Thomas must satisfy the "case" or "controversy" requirement of Article III of the United States Constitution. *Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). In analyzing whether a plaintiff has standing, the court must find three criteria to be satisfied. First, a plaintiff must allege that she has suffered an injury that is concrete and actual, as opposed to conjectural or hypothetical. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). *See also Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) (finding plaintiffs to have standing because they demonstrated a "personal stake in the outcome."). Second, there must be causal connection between the conduct alleged and the injury. *Lujan, supra,* 504 U.S. at 560, 112 S.Ct. at 2136. Finally, it must be "likely" and not merely "speculative" that the injury will be "redressed by a favorable decision." *Id.* Ms. Thomas fails to meet these requirements, because she does not allege a concrete injury to herself.

In *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the Supreme Court denied standing to the plaintiffs, who were challenging an action of HEW as unconstitutional. Writing for the Court Justice Rehnquist stated:

---

**8.** This claim would also fail against the federal defendants on its merits because they do not own or manage Cabrini–Green and therefore would not be responsible for evicting her attacker.

**9.** In this same paragraph of the complaint, Ms. Thomas alleges that the state and federal defendants have waged "genocide" against the low-income African–American residents of Cabrini–Green. In her reply to the state defendant's motion to dismiss, plaintiff cites 18 U.S.C. § 1091(a) in which the offense of "Genocide" is defined. This statute is a criminal statute which does not establish a private right of action. To the extent that Ms. Thomas asserts a claim of "genocide" in her complaint, it is dismissed.

**10.** The state court complaint filed against Ms. Thomas is a matter of public record. I may therefore take judicial notice of it when addressing this motion to dismiss. *See Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994).

They fail to identify any personal injury suffered by plaintiffs as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III.

*Id.* at 485, 102 S.Ct. at 765. Ms. Thomas has not alleged that she lives in one of the Cabrini–Green units which is to be demolished. She will therefore not suffer the direct consequence of losing her home. Moreover, Ms. Thomas does not allege that she will be adversely affected at all by the demolition of buildings. She may not bring this suit simply to complain for those people who reside in the buildings to be demolished. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) ("The plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").[11]

. In a similar case, the court in *Thompson v. Binghamton Housing Authority*, 546 F.Supp. 1158 (N.D.N.Y.1982), reached the same conclusion. In *Thompson*, three public housing tenants sued a PHA, HUD, and other public officials to prohibit the installation of utility meters in public housing apartments. *Id.* at 1162. The court found that the plaintiffs lacked standing to challenge the installation of meters in buildings in which they did not live, recognizing that the plaintiffs fell "far short of the Art. III requirements for 'injury in fact.'" *Id.* at 1177. The court found "no indication that these plaintiffs will be adversely affected by [the alleged unlawful action] in buildings where they do not reside or that if the [action] were enjoined, these plaintiffs would be benefited." *Id.* at 1178. Like the plaintiffs in *Thompson*,

Ms. Thomas suggests no injury that she will suffer if some Cabrini–Green buildings are demolished. She therefore lacks standing to bring this claim. Accordingly, it is dismissed.

■ In her final claim, Ms. Thomas alleges a conspiracy between the defendants to overcharge rent to public housing residents. Her complaint alleges that a rate of 10 percent of income should be charged very low income residents rather than the 30 percent rate they are presently being charged. For support, plaintiff cites 42 U.S.C. § 1437a and 12 U.S.C. § 1701z–11. This claim raises the same issue as Ms. Thomas' claim in count one for rent overcharge. As stated earlier, the defendants have not violated the Housing Act by charging her 25–30% of her adjusted income. This claim is also therefore dismissed.

## II.  The State Defendant—CHA

### A.  The claims alleged in Count One of the Complaint.

■ Ms. Thomas also asserts her claim for a rent overcharge against the CHA. As discussed with respect to the federal defendants, because the rent she is charged is within the statutory limits, this claim must fail.[12]

■ Ms. Thomas next claims that the CHA rented her an unsanitary apartment.[13] As stated above, the United States Housing Act does not ensure the habitability of all public housing residences. Ms. Thomas, therefore, fails to state a federal cause of action against the CHA for the poor conditions of her apartment.

Plaintiff may still have a cause of action against the CHA under state law. Because

---

11. This case is distinct from one brought by a class of residents or by a tenants' association. *See, e.g., Henry Horner Mothers Guild v. Chicago Housing Authority*, 780 F.Supp. 511 (N.D.Ill. 1991) (allowing a class of residents and housing applicants to maintain its suit); *Concerned Tenants Ass'n of Father Panik Village v. Pierce*, 685 F.Supp. 316 (D.Conn.1988) (allowing a class action suit filed by a tenants association and 13 named residents on behalf of more than 700 resident families to stand).

12. For the same reason, Ms. Thomas' conspiracy claim in count II is also dismissed.

13. Count one also alleges that the CHA has cut back over 75 percent of its maintenance services, resulting in unsafe and unsanitary conditions. This claim merely serves to allege a possible contributing factor to the unsanitary conditions of plaintiff's apartment. I therefore do not address it separately.

this claim is not related to Ms. Thomas' First Amendment claim, the only federal claim that survives this motion to dismiss, I do not have supplemental jurisdiction to hear it under 28 U.S.C. § 1367(a). It is, accordingly, dismissed. *See Hale, supra,* 642 F.Supp. at 1109 (finding no subject matter jurisdiction over suit against the CHA alleging unsanitary apartments).

■ Ms. Thomas also claims that she was attacked by another CHA resident. As noted above, this claim presents two possible causes of action. To the extent that plaintiff has brought this claim to demand that the CHA evict her attacker, it is dismissed because she lacks standing to assert this claim, as stated above. If Ms. Thomas wishes to bring a claim for negligent security, that claim would also arise under state law. Like her claim of an unsanitary apartment, this claim is not related to Ms. Thomas' First Amendment claim. I therefore may not exercise supplemental jurisdiction over it. 28 U.S.C. § 1367(a).

As her final claim in count I, Ms. Thomas asserts that the CHA has denied her and members of her "group" the use of common public CHA meeting rooms. I interpret her to claim that the CHA has violated her First Amendment right to freedom of association and speech.

■ The First Amendment protects, *inter alia,* the right of all persons to speak freely and to associate together in groups to further their lawful interests. *Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 464–66, 99 S.Ct. 1826, 1827–28, 60 L.Ed.2d 360 (1979). This right is not absolute; the state may enforce some content-neutral restrictions on time, place, and manner. *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983). If the restrictions on the use of the Cabrini–Green rooms are unreasonable, Ms. Thomas may be entitled to relief. *Id.* at 46, 103 S.Ct. at 955. Moreover, if the restrictions were applied in such a fashion as to discriminate against Ms. Thomas, she would also be entitled to relief. It therefore does not "appear[ ] beyond doubt that the plaintiff can prove no set of facts in support of [her]

claim that would entitle [her] to relief." *Hughes, supra,* 449 U.S. at 10, 101 S.Ct. at 176. This claim is therefore not dismissed.

*B. Count Two*

In count II, Ms. Thomas alleges that the CHA filed a "fraudulent" eviction action against her. I see two potential claims that she is raising: a violation of the Housing Act and her due process rights, or malicious prosecution.

■ According to her complaint, the CHA instituted an eviction proceeding against Ms. Thomas without first providing her a grievance hearing. HUD regulations require a grievance procedure before residents of HUD-assisted housing projects may be evicted. *See* 24 C.F.R. § 966. Although, according to plaintiff's complaint, CHA did not follow this regulation by giving her this hearing before filing the state court action, Ms. Thomas was never evicted. She therefore may not assert a violation of the HUD regulations, which only require a hearing before a resident is evicted. ·

The court in *Herring v. Chicago Housing Authority,* 850 F.Supp. 694 (N.D.Ill.1994) recently addressed this issue. In *Herring,* the CHA had filed a state action to evict the plaintiff, a public housing project tenant. *Id.* at 697. The CHA subsequently dismissed the action without prejudice to reinstate. *Id.* Ms. Herring remained in her apartment throughout the litigation. *Id.* The court noted that plaintiff was never evicted, she did not lose any of her leasehold rights, and her lease was never terminated. *Id.* Because Plaintiff's lease never terminated, the court ruled that "no deprivation has occurred and Plaintiff's Due Process, United States Housing Act, and lease claims must fail." *Id.* at 698.

Ms. Thomas, like the plaintiff in *Herring,* was not evicted from her apartment. She does not allege that her lease ever terminated or that she lost leasehold rights in her apartment. She continues to live in the same apartment. Under the analysis in *Herring,* Ms. Thomas does not allege a claim under Due Process, United States Housing Act, or her lease. Accordingly, to the extent Ms.

**1168**

Thomas asserts a Due Process claim, it is dismissed.

Ms. Thomas may also be pursuing a claim of malicious prosecution. Malicious prosecution is a state law claim. Because this claim is not related to Ms. Thomas' First Amendment claim, I will not exercise supplemental jurisdiction over it. It is therefore dismissed against the CHA.

Finally, plaintiff's illegal demolition claim is dismissed because she lacks standing to raise it. *See supra.*

### Conclusion

For the reasons stated above, the complaint against the federal defendants is dismissed. To the extent Ms. Thomas asserts a First Amendment claim against the CHA, it remains.

**ENTER ORDER.**