**Dorothy J. THOMAS, Plaintiff,**

**v.**

**CHICAGO HOUSING AUTHORITY,
a municipal corporation,
Defendant.**

**No. 96 C 7512.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 9, 1997.

**560**

Dorothy J. Thomas, Chicago, IL, pro se.

Ann L. Wallace, U.S. Attorney's Office, Chicago, IL, for Chicago Housing Authority.

Ann L. Wallace, U.S. Attorney's Office, Chicago, IL, Dana Keone O'Banion, Scott Eric Turner, Chicago Housing Authority, Chicago, IL, Nancy K. Laureto, Chicago Housing Authority Legal Dept., Chicago, IL, for Vance Lane, Joseph Schwhines, Kimberlee Rupert, U.S. Dept. of Housing and Urban Development, Jack Kemp, and Henry Cisneros.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Dorothy J. Thomas, has filed suit against the Chicago Housing Authority ("CHA"), a state housing authority. The CHA has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion to dismiss is granted in part and denied in part.

### Background

Ms. Thomas is a public housing tenant residing in the Cabrini Extension project, one of three projects collectively known as "Cabrini–Green." The CHA manages public housing in the City of Chicago. The CHA is subsidized by the federal government and must comply with federal regulations under the United States Housing Act. 42 U.S.C. § 1437 *et seq.* Ms. Thomas makes numerous allegations in her complaint.[1] Count I of the complaint alleges that the CHA fraudulently overcharged Ms. Thomas for rent. Count II alleges the CHA rented Ms. Thomas an unsafe and unsanitary apartment in 1990.

Count III alleges that Ms. Thomas was assaulted by another CHA resident, but that after the assault the CHA refused to take any steps to discipline or evict her attacker. Count III further alleges a CHA security guard almost caused Ms. Thomas to be falsely arrested and that the CHA violated federal law by bringing an improper forcible entry and detainer action (eviction) against Ms. Thomas. Count IV alleges the CHA has denied Ms. Thomas access to common rooms for volunteer group meetings. Count V realleges that the CHA violated federal law by bringing an improper forcible entry and detainer action against Ms. Thomas. Count VI appears to allege the CHA is demolishing Cabrini–Green buildings in violation of federal law. Count VI also alleges that HUD and the CHA conspired to overcharge public housing residents rent.[2]

Intermittently throughout Ms. Thomas' complaint she cites 42 U.S.C. §§ 1437 *et seq.;* 12 U.S.C. § 1701 *et seq.;* 42 U.S.C. §§ 1983; 42 U.S.C. §§ 1985(3); and the First, Fifth, and Fourteenth Amendments as the bases for her claims. Ms. Thomas' complaint states that she has lost income, suffered physical pain, emotional distress, mental anguish and humiliation. Ms. Thomas seeks $1,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorney fees, and her alleged rent overcharge.

---

1. Ms. Thomas has filed a 62 page, handwritten complaint, alleging six "counts." This court will address as many claims as it can reasonably decipher from the complaint.

2. Ms. Thomas filed essentially the same complaint on August 18, 1995, in state court. That case was removed and I dismissed all but one claim. Ms. Thomas has since amended her complaint in state court, charging virtually identical claims. Again, the case has been removed. I dismissed the federal defendants and the CHA filed the motion now before me.

*Count I* [3]

*Count II*

Ms. Thomas alleges that, by being charged 25% to 30% of her monthly income, she is being charged a monthly rent that exceeds the statutory limit. Ms. Thomas argues she should only have to pay 10% of her "very low income." The rent formula of the United States Housing Act is supplied by 42 U.S.C. § 1437a. It provides in part:

> [A] family shall pay as rent for a dwelling unit assisted under this chapter...the highest of the following amounts, rounded to the nearest dollar:
>
> (A) 30 per centum of the family's monthly adjusted income;
>
> (B) 10 per centum of the family's monthly income; or
>
> (C) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payment which is so designated.

42 U.S.C. § 1437a(a)(1).

The plain language of the statute indicates that if subsection (c) does not apply, the *higher* rate calculated under subsection (a) or (b) is the maximum rent allowed. Ms. Thomas admits that her rent has been set at 25–30 percent of her adjusted income.[4] The rent she is paying therefore clearly falls within the guidelines provided under Section 1437a. This claim is therefore dismissed.[5]

In Count II Ms. Thomas alleges the CHA "willfully, intentionally, [or] knowingly" rented her an unsafe and unsanitary apartment. Ms. Thomas notes the existence of various problems with her apartment, including a cracked and leaking ceiling, faulty plumbing, flooding, mold-covered walls and floors, and an infestation of mice and roaches. Ms. Thomas complains that her apartment violates 42 U.S.C. §§ 1437, 1437d(k), 1437d(*l*)(2), and 42 U.S.C. § 1983. Section 1437, the broad policy statement of the United States Housing Act, does not imply a private cause of action or enforceable rights under Section 1983. *Thomas v. Chicago Hous. Auth.*, 919 F.Supp. 1159, 1164 (N.D.Ill. 1996) (citations omitted). Section 1437d(*l*)(2), which sets out the terms a public housing authority lease must contain, also does not create a private right of action or enforceable rights under Section 1983. *Imes v. Philadelphia Hous. Auth.*, 928 F.Supp. 526, 530 (E.D.Pa.1996). Section 1437d(k) states that the public housing authorities must form an extensive grievance system to remedy disputes with tenants. Ms. Thomas does not allege the CHA has neglected to provide a grievance system or that the grievance system has somehow failed her. Accordingly, her claims under Section 1437 *et seq.* are dismissed.

Ms. Thomas also claims her unsanitary apartment violates the Fourteenth

---

**3.** A *pro se* complaint, "however inartfully pleaded," is held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980). The court's role is to ensure that claims of *pro se* litigants are given "fair and meaningful consideration." *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir.1984). Accordingly, *pro se* complaints must be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The complaint need not specify the correct legal theory, nor point to the correct statute in order to survive a motion to dismiss. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). Finally, a district court may dismiss a complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes, supra*, 449 U.S. at 10, 101 S.Ct. at 176.

**4.** As the CHA points out, Ms. Thomas' 1994 total family income was $5,352.00 and her adjusted gross income was $4,952.00. (Def.'s Ex. A). Thirty percent of the adjusted gross income ($1,485.60) is higher than 10% of the monthly income ($535.20).

**5.** In addition to Section 1437a, Ms. Thomas cites 12 U.S.C. § 1701 *et seq.*, the National Housing Act, as a basis for her claim. This act encourages the private building of low and moderate income housing through the use of federal credit. *See United States v. Winthrop Towers*, 542 F.Supp. 1042, 1044 (N.D.Ill.1982). It does not apply to this case. Ms. Thomas also cites 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), both of which are inapplicable to this claim.

Amendment to the Constitution. It was decided long ago, however, that the Constitution does not guarantee "access to dwellings of a particular quality...." *Lindsey v. Normet,* 405 U.S. 56, 74, 92 S.Ct. 862, 874–75, 31 L.Ed.2d 36 (1972). Thus, this claim will also be dismissed.[6] Ms. Thomas may have a cause of action under state law. But, since this action is not related to her First Amendment claim, the only claim that survives this motion, I do not have supplemental jurisdiction to hear it. 28 U.S.C. § 1367(a).

## Count III

In Count III Ms. Thomas makes a variety of claims. She first alleges that she was physically attacked by another CHA resident, but that the CHA did not evict her attacker. Ms. Thomas cites numerous parts of Section 1437 as the basis for her claim. As noted above, Ms. Thomas may not bring a private right of action under the sections of this statute that she cites. Ms. Thomas also cites 310 ILCS 10/25(f)(1) as a basis for her complaint. This is the enabling act for public housing authorities in Illinois and does not provide a private right of action. Further, Ms. Thomas does not have standing to demand that her attacker be evicted for violating public housing regulations. *Thomas,* 919 F.Supp. at 1164.

Ms. Thomas also alleges this attack violated her constitutional rights. There are three instances under 42 U.S.C. § 1983 in which a government entity may be held liable for violating the civil rights of a person: (1) there was an express policy that, when enforced, caused a constitutional violation; (2) there was a widespread practice that, although not expressly authorized, was so permanent and well settled as to constitute a custom or usage with the force of law; or (3) the alleged constitutional injury was caused by a person with final policymaking authority. *Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 734–35 (7th Cir.1994)

(citations omitted). Ms. Thomas has not alleged facts regarding the attack by another CHA resident that could possibly form the basis of a claim against the CHA for municipal liability. Ms. Thomas may have a state cause of action for negligent security. But, since this claim is not related to the First Amendment claim that survives this motion, I do not have supplemental jurisdiction to hear it.

Count III also alleges that a CHA security officer almost had Ms. Thomas falsely arrested in January, 1994. This complaint was filed in September, 1996. Thus, to the extent Ms. Thomas is arguing this event violated her constitutional rights under Section 1983, it is barred by the two-year statute of limitations. *Kalimara v. Illinois Dep't of Corrections,* 879 F.2d 276 (7th Cir.1989)(per curiam).

Ms. Thomas also argues that she has twice been the victim of fraudulent eviction proceedings by the CHA, presumably in violation of her due process rights and the Housing Act. It appears that these eviction actions were eventually dismissed against Ms. Thomas. Ms. Thomas was never evicted, her lease never terminated, and she did not lose any of her leasehold rights. To the extent Ms. Thomas asserts a due process claim, it is dismissed. *Thomas,* 919 F.Supp. at 1167–68; *Herring v. Chicago Hous. Auth.,* 850 F.Supp. 694 (N.D.Ill.1994).[7]

## Count IV

Ms. Thomas alleges in Count IV that the CHA has denied her access to common rooms for volunteer group meetings and has generally been hostile to her volunteer efforts. Ms. Thomas states that she has organized a "Children Program," "Adult Program," and "Senior citizen's program" at Cabrini–Green. Ms. Thomas claims the CHA would not allow her to use Cabrini–Green public meeting rooms and halls for group events. Ms. Thomas alleges she has even

---

**6.** Ms. Thomas also cites 720 ILCS 5/12–5.1 as a basis for her claim. This is an Illinois criminal statute. It does not create a private right of action and thus, is inapplicable to this case. Section 1985(3) is inapplicable to this claim because Ms. Thomas does not allege a conspiracy.

**7.** Ms. Thomas also appears to complain in Count III that she has been forced to wait in line too long at the Cabrini–Green management office before being helped. While the court is sympathetic to this claim, it is not cognizable under federal law.

made request for meeting rooms to "upper management" of CHA, located in downtown Chicago. This request was to no avail. Ms. Thomas further claims that, as time passed, the CHA became more hostile towards her activities, attempting to restrain Ms. Thomas from using the "playlot" at Cabrini–Green for children's social programs and fundraising benefits.

Further, Ms. Thomas alleges the CHA threatened group members with eviction if they continued their activities on federal property and that the CHA told Ms. Thomas her rent would be raised because she was making unreported income through fundraising benefits. Additionally, Ms. Thomas claims she organized a Cabrini–Green security "patrol" group, but that the CHA would not give her office space or equipment, although it had done so for other patrol groups.

As I noted in a previous opinion concerning Ms. Thomas' claims, the First Amendment protects individuals right to speak freely and to congregate in groups to further lawful interests. *Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 464–66, 99 S.Ct. 1826, 1827–29, 60 L.Ed.2d 360 (1979). While the state may enforce some content-neutral restrictions on time, place, and manner, it may not do so unreasonably. *Perry Educ. Ass'n v. Perry Local Educ. Ass'n,* 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–56, 74 L.Ed.2d 794 (1983). Ms. Thomas argues the CHA is unreasonably restricting her right to use Cabrini–Green common rooms and other areas. She also claims these restrictions are being applied inequitably against her as compared to others. If these allegations are true, Ms. Thomas may be entitled to relief. Accordingly, this claim will not be dismissed.

The CHA moves, pursuant to Federal Rule of Civil Procedure 12(e), for a more definite statement of the First Amendment claim regarding the incidents that occurred, who was involved, and what was said. I agree that the complaint is very vague concerning who was involved in the events Ms. Thomas describes and who said what. Ms. Thomas simply states she talked to Cabrini "managers," that Cabrini–Green "managers" threatened her, and that Cabrini–Green "management" was hostile towards her. Without more, the CHA cannot meaningfully reply to Ms. Thomas' complaint. The motion for a more definite statement is, therefore, granted.

### Count V

In Count V Ms. Thomas appears to reallege her claim that she has been the victim of an attempted fraudulent eviction by CHA. As noted earlier, Ms. Thomas was never evicted, her lease never terminated, and she did not lose any of her leasehold rights. To the extent Ms. Thomas asserts a due process claim or violation of Housing Act regulations, it is dismissed. *Thomas,* 919 F.Supp. at 1167–68; *Herring v. Chicago Hous. Auth.,* 850 F.Supp. 694 (N.D.Ill.1994).[8]

### Count VI

Ms. Thomas alleges in Count VI that the CHA is demolishing Cabrini–Green buildings in violation of federal law. The building Ms. Thomas resides in is not being demolished. As I noted in a previous opinion involving Ms. Thomas, she does not have standing to bring this claim. *Thomas,* 919 F.Supp. at 1165–66. She has suffered no injury and she may not bring this suit on behalf of those people who reside in the buildings to be demolished.[9]

Mr. Thomas also alleges in Count VI a conspiracy between HUD and the CHA to overcharge rent to tenants in Cabrini–Green. Ms. Thomas believes Cabrini–Green residents should be charged ten percent of their income for rent instead of thirty percent. As was discussed in Count I, the CHA may legally charge Ms. Thomas and others thirty

---

8. Ms. Thomas also brings this claim under 42 U.S.C. § 1437e(a)(1)(C), which allows a public housing agency to provide designated housing to elderly and disabled housing. It does not support a private right of action.

9. Ms. Thomas also cites as a basis for this claim 18 U.S.C. § 1091, the federal criminal genocide statute. There is no private right of action under this federal statute.

percent of adjusted gross income for rent. Accordingly, this claim is dismissed.[10]

### Punitive Damages

█ Ms. Thomas requests $5,000,000.00 in punitive damages in Count IV of her complaint. The CHA requests the prayer for punitive damages be stricken. The CHA is a municipal entity. 310 ILCS 10/1 *et seq.* Municipal entities are not liable for punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 267, 101 S.Ct. 2748, 2759–60, 69 L.Ed.2d 616 (1981). Additionally, under the Illinois "Local Governmental and Governmental Employees Tort Immunity Act," local government entities are not liable for punitive damages. 745 ILCS 10/2–102. Accordingly, Ms. Thomas' request for punitive damages in Count IV is stricken.

### Conclusion

Ms. Thomas's complaint alleges virtually identical claims as those before this court in Ms. Thomas' previous case. For the reasons stated above, Counts I, II, III, V, and VI are dismissed with prejudice. The CHA's motion to strike punitive damages is granted as is its motion for a more definite statement on Count IV. Ms. Thomas has 45 days from the filing of this order to provide a statement explaining, to the extent she knows, who the managers were that were involved, approximate dates of the incidents, and what was said. If she fails to do so, Count IV will be dismissed with prejudice.

---

10. Ms. Thomas also appears to allege that a CHA Local Advisory Council meeting held in July, 1995, was not open to all residents, and that a CHA executive director was rude to Ms. Thomas at the meeting. Ms. Thomas has not cited, nor is this court aware of a valid basis for bringing these claims in federal court.