**SUSIE BANKS, et al.  Plaintiffs,**

v.

**DALLAS HOUSING AUTHORITY, et al.  Defendants.**

**No. 3–87–CV–1713–BD.**

United States District Court, N.D. Texas, Dallas Division.

July 5, 2000.

Michael M. Daniel, Laura B. Beshara, Michael M. Daniel, P.C., Dallas, TX, for Plaintiffs.

Randy A. Nelson, Sherry L. Travers, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Defendants Challenge Properties d/b/a Robin Square Apartments, Alfred D. Hughes Corporation, and Alfred D. Hughes ("Robin Square Defendants") have filed a renewed motion for judgment as a matter of law and a motion for entry of judgment as to all class members.  For the reasons stated herein, both motions are granted.

### I.

This is a class action brought on behalf of more than 300 African–American tenants who resided at the Robin Square Apartments, a housing project subsidized under the HUD Section 8 Moderate Rehabilitation Program, during the two years prior to October 28, 1988.  Plaintiffs sued the Dallas Housing Authority and Robin Square Defendants under various civil rights statutes, including 42 U.S.C. § 1437f and its implementing regulations.  DHA admitted that it approved the Robin Square project for the purpose of housing African–Americans in segregated neighborhoods and allowed federal support to continue in order to maintain that segregation.  The Robin Square Defendants denied all liability.

The claims of seven class members proceeded to trial on May 15, 2000.[1]  After

---

1. The plaintiffs involved in this trial were     Arlee Booth, Lucille Cunningham, Aretha

hearing three days of testimony, the jury found that the Robin Square Defendants operated the apartment project in violation of the Section 8 Moderate Rehabilitation Program Housing Quality Standards. However, no damages were awarded to plaintiffs as a result of those violations. All other claims were resolved in favor of the Robin Square Defendants.[2] The Court must now decide: (1) whether plaintiffs have a private right of action under 42 U.S.C. § 1437f and its implementing regulations; and (2) whether the jury verdict is binding on all other class members.

## II.

The United States Housing Act of 1937, as amended, provides in relevant part:

> For the purpose of upgrading and thereby preserving the Nation's housing stock, the Secretary is authorized to make assistance payments under this section directly or through public housing agencies pursuant to contracts with owners or prospective owners who agree to upgrade housing so as to make and keep such housing *decent, safe, and sanitary* through upgrading which involves less than substantial rehabilitation, as such upgrading and rehabilitation are defined by the Secretary. The Secretary is authorized to prescribe such terms and conditions for contracts entered into under this section pursuant to this paragraph as the Secretary determines to be necessary and appropriate, except that such terms and conditions, to the maximum extent feasible, shall be consistent with the terms and conditions otherwise applicable with respect to other dwelling units assisted under this section.

Pub.L. 95–557, Title II, § 206(e), 91 Stat. 2092 (Oct. 31, 1978) (emphasis added), *now codified at* 42 U.S.C. § 1437f(e). The

HUD regulations give content to the statutory mandate requiring "decent, safe, and sanitary" housing for residents of Section 8 Moderate Rehabilitation projects. The regulations provide that a dwelling unit must have:

> (a) sanitary facilities which are in proper operating order, are adequate for personal cleanliness, including hot and cold running water and the adequate disposal of human waste;
>
> (b) adequate kitchen facilities including properly operating appliances and hot and cold running water;
>
> (c) adequate space and security;
>
> (d) safe heating and/or cooling facilities which are in proper operating condition and can provide adequate heat and/or cooling to each room in the dwelling unit appropriate for the climate to assure a healthy living environment;
>
> (e) caulking and weatherstripping insulation to the extent the improvements are practicable, cost effective, and financially feasible;
>
> (f) the dwelling must be structurally sound so as to not pose any threat to the health and safety of the occupants and so as to protect the occupants from the environment;
>
> (g) the unit must be free from vermin and rodent infestation; and
>
> (h) the neighborhood must be reasonably free from hazards to the health, safety, and general welfare of the occupants.

24 C.F.R. § 882.109. In addition, the site and neighborhood must:

> (a) be reasonably free from hazards to the health, safety, and general welfare of the occupants;
>
> (b) be suitable from the standpoint of facilitating full compliance with the civil rights laws and executive orders;

Davis, Joe Davis, Mamie Hunter, Sherlton Mays; and Reatta Taylor.

**2.** The jury awarded damages to each plaintiff for diminished rental value proximately

caused by the wrongful conduct of DHA. Those findings are not implicated by the present motions.

(c) promote greater choice of housing opportunities and avoid undue concentration of assisted persons in areas containing a high proportion of low-income persons; and

(d) be accessible to social, recreational, educational, commercial, health, municipal facilities and services, and employment opportunities and access that are at least equivalent to those found in neighborhoods consisting largely of unassisted, standard housing of similar market rents.

*Id.* § 882.404(b). The jury found that the Robin Square Defendants "purposefully and consistently" operated the apartment project in violation of one or more of these standards. The question is whether plaintiffs have a private right of action for such violations.

Plaintiffs recognize that section 1437f does not explicitly confer a private remedy. Nevertheless, they make two arguments in an attempt to salvage this claim. First, plaintiffs contend that violations of section 1437f and its implementing regulations are actionable under 42 U.S.C. § 1983. The Court need not consider this argument in any detail because the jury found against plaintiffs on their section 1983 claim.[3] Second, plaintiffs assert that there is an "implied" cause of action under section 1437f. Notably, neither the Supreme Court nor the Fifth Circuit have ever recognized such a claim. Nor is there anything in the legislative history of the statute to suggest that Congress intended to provide a private right of action for tenants of Section 8 Moderate Rehabilitation housing. *See Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981) ("[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."). In fact, the only reported decision on the subject reaches a contrary result. *See, e.g. Thomas v. Chicago Housing Authority,* 919 F.Supp. 1159, 1164 (N.D.Ill.1996) (interpreting policy statement of section 1437).

This Court declines plaintiffs' invitation to create a private cause of action for violations of 42 U.S.C. § 1437f and its implementing regulations. Accordingly, the Robin Square Defendants are entitled to judgment as a matter of law on this ground.

---

**3.** Plaintiffs sued the Robin Square Defendants under 42 U.S.C. § 1983 for violating their rights under the Fourteenth Amendment to the United States Constitution. The jury was instructed that the Fourteenth Amendment prohibits purposeful racial segregation in government assisted housing and purposeful racial discrimination in the provision of housing services or facilities. In particular, the jury was told that:

It is illegal under the Fourteenth Amendment to deny or delay maintenance or repairs, or to deny or limit services or facilities in connection with a rental dwelling because of race or color. The Section 8 Moderate Rehabilitation Program Housing Quality Standards regulations set an objective standard for the services and facilities, maintenance, and repair that each unit and project receiving funds under the Section 8 MRP must meet. These standards apply to the individual units, the apartment complex in which the units are located, and the neighborhood within which the unit and the complex are located. If you find that one or more of the [Robin Square] Defendants was a state actor who purposely and consistently operated the Robin Square Apartments in violation of the Section 8 MRP Housing Quality Standards for the purpose of discriminating against plaintiffs because of race or color, plaintiffs have proven a violation of the Fourteenth Amendment to the United States Constitution.

(Jury Charge at 19). The jury found that none of the Robin Square Defendants: (1) acted with a racially discriminatory purpose to subject African–Americans to segregated housing; or (2) purposefully and consistently operated the Robin Square Apartments in violation of the Section 8 Moderate Rehabilitation Program Housing Quality Standards for the purpose of discriminating against plaintiffs because of race or color. (*Id.* at 19–20).

### III.

The Robin Square Defendants also move for the entry of judgment in their favor as to all class members. They point out that this case was certified as a class action, at least in part, because of common questions of law and fact involving neighborhood demographics and site conditions. *See* MEMORANDUM OPINION ON CLASS CERTIFICATION, 6/11/98 at ¶ 4. Indeed, plaintiffs represented to the Court that "the issue of liability involves the same proof for [the named] plaintiffs as it does for the class members." (Plf. Mot. for Class Cert. at 19). Proper notice was given to the class members in accordance with Rule 26(b)(3) of the Federal Rules of Civil Procedure. Now that these liability issues have been tried to a jury and resolved in favor of the Robin Square Defendants, they maintain that the judgment should be binding on the class as a whole.

Plaintiffs oppose the motion based on certain language contained in the November 1, 1999 pretrial scheduling order. Pursuant to this order, the case proceeded to trial on the liability and damage claims of nine plaintiffs selected by the parties. One of those plaintiffs, Arlee Booth, is a class representative. Booth had a full and fair opportunity to litigate the liability issues presented in this case on behalf of herself and the entire class. As the district judge recognized:

> [A]bsent class certification on the liability issues, the parties (and the Court) would be faced with the prospect of litigating the same issues with the same documents and the same witnesses over and over and over again. If the class is certified and defendants win on the liability or punitive damage issues, then the elimination of issues and cases would result in a clear saving of judicial and party resources.

MEMORANDUM OPINION ON CLASS CERTIFICATION, 6/11/98 ¶ 18.

The Court has ruled that plaintiffs have no private right of action under 42 U.S.C. § 1437f and its implementing regulations.

The jury found in favor of the Robin Square Defendants as to all other claims and causes of action. There is no reason why these findings should not be binding on the class was a whole. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 813–14, 105 S.Ct. 2965, 2975, 86 L.Ed.2d 628 (1985) (judgment regarding claims for monetary damages binds entire class where proper notice is given); *Meza v. General Battery Corp.,* 908 F.2d 1262, 1266–67 & n. 1 (5th Cir.1990), *citing* RESTATEMENT (SECOND) OF JUDGMENTS § 41(1) (1980) (non-party is bound by judgment if he or she was represented as part of a class in prior litigation). Accordingly, the Robin Square Defendants are entitled to a judgment as to the claims asserted by other class members.

The Court will enter a final judgment in favor of the Robin Square Defendants by separate order.

SO ORDERED.